[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Maddox*, Slip Opinion No. 2022-Ohio-764.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-764

THE STATE OF OHIO, APPELLEE, *v*. MADDOX, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Maddox*, Slip Opinion No. 2022-Ohio-764.]

*Criminal law—Sentencing—R.C. 2967.271—Reagan Tokes Law—Ripeness—A criminal defendant's challenge to the constitutionality of R.C. 2967.271 is ripe for review on the defendant's direct appeal of his or her conviction and prison sentence—Court of appeals' judgment reversed and cause remanded.*

(No. 2020-1266—Submitted June 29, 2021—Decided March 16, 2022.)

CERTIFIED by the Court of Appeals for Lucas County,

No. CL-19-1253, 2020-Ohio-4702.

_____

STEWART, J.

{¶ 1} In this certified-conflict case, we are asked to decide whether a criminal defendant's challenge to the constitutionality of R.C. 2967.271, which is a part of the "Reagan Tokes Law" and allows the Ohio Department of

Rehabilitation and Correction ("DRC") to administratively extend an incarcerated person's prison term beyond his or her minimum prison term or presumptive earned early-release date but not beyond his or her maximum prison term, is ripe for review on the defendant's direct appeal of his or her conviction and prison sentence. We hold that it is. Accordingly, we reverse the judgment of the Sixth District Court of Appeals and remand the matter to that court for it to consider whether the challenged provisions are constitutional.

**Facts and Procedural History**

{¶ 2} On September 30, 2019, appellant, Edward Maddox, entered guilty pleas pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), to two counts of attempted burglary in violation of R.C. 2923.02(A) and R.C. 2911.12(A)(2) and (D), felonies of the third degree, and one count of burglary in violation of R.C. 2911.12(A)(2) and (D), a felony of the second degree. The trial court sentenced Maddox pursuant to the Reagan Tokes Law to 12-month definite prison terms for each of the attempted-burglary counts and an indefinite prison term of four to six years for the burglary count. The sentences were ordered to be served concurrently.

{¶ 3} Maddox appealed his convictions to the Sixth District Court of Appeals, asserting, among other alleged errors, that it "was plain error for the trial court to impose [a] sentence under the Reagan Tokes Law because its provisions are unconstitutional nullities." 2020-Ohio-4702, ¶ 4. Specifically, he argued that the sections of the statute that allow DRC to extend his prison term beyond the presumptive minimum term violate the United States and Ohio Constitutions, including the requirement of separation of powers and his rights to a trial by jury and due process of law. *Id.* at ¶ 5.

{¶ 4} Effective March 22, 2019, the Reagan Tokes Law established indefinite-sentencing provisions for people convicted of non-life-sentence felony offenses of the first or second degree. Under R.C. 2967.271(B) through (D), there

is a presumption that the offender will be released on the expiration of his or her minimum prison term or earned early-release date, but the statute enables DRC to rebut the presumption and keep the offender incarcerated up to the expiration of his or her maximum prison term.

{¶ 5} The court of appeals did not reach the merits of Maddox's constitutional challenge, holding that the issue is not ripe for review because Maddox has not yet been subjected to a prison term exceeding his minimum prison term. 2020-Ohio-4702 at ¶ 11. Instead, the court held that the appropriate method for Maddox to challenge the constitutionality of the presumptive-release sections of the law is to file a petition for a writ of habeas corpus if he is not released upon the expiration of his four-year minimum term. *Id.* at ¶ 12.

{¶ 6} Maddox filed in the Sixth District a motion to certify a conflict regarding the ripeness issue, asserting that the court of appeals' judgment is in conflict with the judgments in *State v. Leet*, 2d Dist. Montgomery No. 28670, 2020-Ohio-4592, *State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153, *State v. Barnes*, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150, and *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837. The court of appeals granted the motion and certified a conflict on the following issue of law:

> Is the constitutionality of the provisions of the Reagan Tokes [Law], which allow the Department of Rehabilitation and Correction[] to administratively extend a criminal defendant's prison term beyond the presumptive minimum term, ripe for review on direct appeal from sentencing, or only after the defendant has served the minimum term and been subject to extension by application of the [law]?

We determined that a conflict exists and agreed to review the certified question. 160 Ohio St.3d 1505, 2020-Ohio-6913, 150 N.E.3d 1150.

**Law and Analysis**

{¶ 7} "In order to be justiciable, a controversy must be ripe for review." *Keller v. Columbus*, 100 Ohio St.3d 192, 2003-Ohio-5599, 797 N.E.2d 964, ¶ 26; *see also Pack v. Cleveland*, 1 Ohio St.3d 129, 438 N.E.2d 434 (1982), paragraph one of the syllabus.  Article IV, Section 4(B) of the Ohio Constitution provides that "[t]he courts of common pleas * * * shall have original jurisdiction over all justiciable matters * * * as provided by law," and this court has stated that "it is the duty of every judicial tribunal to decide actual controversies between parties legitimately affected by specific facts and to render judgments which can be carried into effect."  *Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970). " 'The basic principle of ripeness may be derived from the conclusion that "judicial machinery should be conserved for problems which are real or present and imminent, not squandered on problems which are abstract or hypothetical or remote." ' "  *State ex rel. Elyria Foundry Co. v. Indus. Comm.*, 82 Ohio St.3d 88, 89, 694 N.E.2d 459 (1988), quoting *Comment, Mootness and Ripeness: The Postman Always Rings Twice*, 65 Colum.L.Rev. 867, 876 (1965), quoting Davis, *Ripeness of Governmental Action for Judicial Review*, 68 Harv.L.Rev. 1122, 1122 (1955).

{¶ 8} Ripeness is distinct from standing, but both doctrines require that "an injury in fact be certainly impending."  *Natl. Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C.Cir.1996).  "[I]f a threatened injury is sufficiently 'imminent' to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied."  *Id*. at 1428.  Then, "only the prudential justiciability concerns of ripeness can act to bar consideration of the claim."  *Id*. The prudential-justiciability concerns include (1) whether the claim is fit for judicial decision and (2) whether withholding court consideration will cause

hardship to the parties. *Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir.2017), citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 153, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *abrogated in part on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1997). The first prong of the prudential-justiciability question is met when "[t]he issue presented in th[e] case is purely legal, and will not be clarified by further factual development." *Thomas v. Union Carbide Agricultural Prods. Co.*, 473 U.S. 568, 581, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985).

{¶ 9} Maddox argues that his constitutional challenge is ripe on direct appeal of his convictions and prison sentence because he has been sentenced under a statute that he has claimed violates the separation-of-powers requirement of the Ohio Constitution and his rights to a trial by jury and due process of law under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and their parallel Ohio provisions. He also asserts that the potential maximum punishment for an offense influences pretrial practice, plea bargaining, and the decision whether to go to trial.

{¶ 10} R.C. 2967.271 provides, in part:

(B) When an offender is sentenced to a non-life felony indefinite prison term, there shall be a presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier.

(C) The presumption established under division (B) of this section is a rebuttable presumption that the department of rehabilitation and correction may rebut as provided in this division. Unless the department rebuts the presumption, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive

earned early release date, whichever is earlier. The department may rebut the presumption only if the department determines, at a hearing, that one or more of the following applies:

(1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:

(a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

(D)(1) If the department of rehabilitation and correction, pursuant to division (C) of this section, rebuts the presumption established under division (B) of this section, the department may maintain the offender's incarceration in a state correctional

institution under the sentence after the expiration of the offender's minimum prison term or, for offenders who have a presumptive earned early release date, after the offender's presumptive earned early release date. The department may maintain the offender's incarceration under this division for an additional period of incarceration determined by the department. The additional period of incarceration shall be a reasonable period determined by the department, shall be specified by the department, and shall not exceed the offender's maximum prison term.

(2) If the department maintains an offender's incarceration for an additional period under division (D)(1) of this section, there shall be a presumption that the offender shall be released on the expiration of the offender's minimum prison term plus the additional period of incarceration specified by the department as provided under that division or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date that is specified by the department as provided under that division. The presumption is a rebuttable presumption that the department may rebut, but only if it conducts a hearing and makes the determinations specified in division (C) of this section, and if the department rebuts the presumption, it may maintain the offender's incarceration in a state correctional institution for an additional period determined as specified in division (D)(1) of this section. Unless the department rebuts the presumption at the hearing, the offender shall be released from service of the sentence on the expiration of the offender's minimum prison term plus the additional period of incarceration

specified by the department or, for offenders who have a presumptive earned early release date, on the expiration of the additional period of incarceration to be served after the offender's presumptive earned early release date as specified by the department.

The provisions of this division regarding the establishment of a rebuttable presumption, the department's rebuttal of the presumption, and the department's maintenance of an offender's incarceration for an additional period of incarceration apply, and may be utilized more than one time, during the remainder of the offender's incarceration. If the offender has not been released under division (C) of this section or this division prior to the expiration of the offender's maximum prison term imposed as part of the offender's non-life felony indefinite prison term, the offender shall be released upon the expiration of that maximum term.

{¶ 11} In short, the statute provides that an offender must be released on his or her presumptive release date unless DRC rebuts the presumption and extends the period of incarceration, not to exceed his or her maximum prison term. We hold that Maddox's challenge to the statute's constitutionality is ripe for review on direct appeal because (1) he has been sentenced under the statute, (2) no further factual development is necessary for a court to analyze the challenge, and (3) delaying review would result in duplicative litigation, forcing Maddox and similarly situated people to endure potential violations of their constitutional rights in order to challenge the law. *See Abbott Laboratories* at 149.

{¶ 12} The United States Supreme Court has held that a constitutional challenge to a statute is ripe for review when the claimant is merely threatened with prosecution under the statute and the statute arguably curtails his or her

constitutional rights. *Steffel v. Thompson*, 415 U.S. 452, 462-464, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). In *Steffel*, the petitioner had been warned twice by police to stop distributing handbills opposing American involvement in Vietnam on the sidewalk outside of a shopping center. *Id.* at 455-456. He was threatened with arrest under a Georgia criminal-trespass law. *Id.* at 456-457. In response to the threat, he brought an action for injunctive and declaratory relief in federal district court, claiming that the application of the statute to his conduct violated his rights under the First and Fourteenth Amendments to the United States Constitution. *Id.* at 454-455.

{¶ 13} The district court denied all relief and dismissed the action, finding " 'the rudiments of an active controversy between the parties * * * lacking.' " (Ellipsis added in *Steffel*.) *Id.* at 456, quoting *sub nom. Becker v. Thompson*, 334 F.Supp. 1386, 1389-1390 (N.D.Ga.1971). The petitioner appealed the district court's denial of declaratory relief, and the court of appeals affirmed the district court's judgment. *Id.* at 456-457. The Supreme Court reversed, holding that "it is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Id.* at 459.

{¶ 14} In the case before us, Maddox has already been sentenced under a statute that he has claimed infringes on his constitutional rights, including his rights to a trial by jury and due process of law. *See* 2020-Ohio-4702 at ¶ 5. Moreover, Maddox argues that preventing a defendant from challenging the constitutionality of his or her sentence until habeas corpus is available allows the state to leverage the specter of the Reagan Tokes Law and potential maximum punishment during plea negotiations—without having to defend the law's constitutionality until well after the defendant has been imprisoned.

{¶ 15} In reaching its decision below, the Sixth District relied on our decision in *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000),

to "infer [that] the appropriate method for [Maddox] to challenge the constitutionality of the presumptive release portions of R.C. 2967.271 is by filing a writ of habeas corpus if he is not released at the conclusion of his four-year minimum term of incarceration," 2020-Ohio-4702 at ¶ 12. But *Bray* is distinguishable from this case, because it involved prisoners' challenges to former R.C. 2967.11, Ohio's "bad time" statute, which authorized DRC to unilaterally extend an inmate's sentence beyond the sentence imposed by the trial court if the prisoner committed certain violations while in prison. *Bray* at 134-135. This court held that former R.C. 2967.11 violated the separation-of-powers doctrine, because it stripped the trial courts of their authority to impose final sentences on defendants. *Id.* at 136. Thus, the prisoners in *Bray* had no way to challenge their additional prison time other than through habeas corpus, because the trial courts did not impose that prison time, precluding any remedy through direct appeal.

{¶ 16} In contrast, Maddox and other defendants who have been sentenced under the Reagan Tokes Law have received the entirety of their sentences and the sentences have been journalized. Therefore, a direct appeal is the appropriate way to challenge the constitutionality of the provisions at issue. *See State v. Patrick*, 164 Ohio St.3d 309, 2020-Ohio-6803, 172 N.E.3d 952, ¶ 22 (holding that an appeal of an indefinite sentence on constitutional grounds is permitted under Ohio law).

{¶ 17} While the state counters, and the third dissenting opinion agrees, that Maddox has not suffered any harm under the statute because he has not yet been denied release at the expiration of his minimum prison term, Maddox argues that having to wait until that happens to seek habeas corpus to challenge the law would deny indigent defendants the assistance of counsel because habeas corpus is a civil proceeding in which no right to appointed counsel exists. Maddox also contends that doing so would needlessly consume judicial resources because of the duplicative and piecemeal litigation that would result. And he asserts that "[it] makes no sense to 'wait-and-see' if the [Reagan Tokes Law] is unconstitutional

until after an inmate is held-over because a Byzantine system that postpones adjudication until after someone is physically restrained under an extensive sentence results in the worst legal harm—loss of liberty that cannot be retroactively remedied." We agree.

{¶ 18} Additionally, appellate courts throughout Ohio have already considered the constitutionality of R.C. 2967.271 in direct appeals and have reached different conclusions. In the cases from the Second and Twelfth Districts cited above, the courts held that the statute is constitutional. *See generally Leet*, 2d Dist. Montgomery No. 28670, 2020-Ohio-4592; *Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153; *Barnes*, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150; *Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837. The Third District has also held that the law is constitutional. *See, e.g.*, *State v. Hacker*, 3d Dist. Logan No. 8-20-01, 2020-Ohio-5048. In contrast, and as the Sixth District did in this case, the Fourth and Fifth Districts have held that the constitutionality issue was not ripe for review. *See, e.g.*, *State v. Buckner*, 5th Dist. Muskingum Nos. CT2020-0023 and CT 2020-0024, 2020-Ohio-7017, ¶ 8-10; *State v. Ramey*, 4th Dist. Washington Nos. 20CA1 and 20CA2, 2020-Ohio-6733, ¶ 2. The Eighth District has found the constitutionality issue ripe for review, but it previously reached opposite conclusions regarding the constitutionality of the statute, creating an intra-district conflict. *See State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470, ¶ 4. The court of appeals resolved that conflict in an en banc decision and determined that the presumptive-release provisions of the statute are constitutional. *Id.* at ¶ 103.

{¶ 19} As demonstrated by the appellate courts that have already considered the constitutionality issue, we hold that a challenge to the constitutionality of R.C. 2967.271 is fit for review on a defendant's direct appeal of his or her conviction and prison sentence, because no additional factual development is necessary, *see Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct.1507, 18 L.Ed. 681, thus satisfying

the first prong of the prudential-ripeness test. We further hold that to refrain from reviewing whether R.C. 2967.271 is constitutional would cause hardship to Maddox and others who are similarly situated, thus satisfying the second prong of the prudential-ripeness test. *See Abbott Laboratories* at 149.

{¶ 20} Finally, the first dissenting opinion asserts that "there is no conflict between the Sixth District's judgment and those of the courts of appeals listed in its order certifying a conflict," as the cases listed in the order did not address the issue of ripeness. Dissenting opinion of Kennedy, J., ¶ 26. This position elevates form over substance. Because the appellate courts in those cases decided the constitutional question, they implicitly found the issue ripe for consideration. Similarly, the second dissenting opinion acknowledges that "[w]hile it could be argued that the courts in the conflict cases implicitly concluded that the constitutional challenges to the law were ripe for review, it could also be argued that those courts did not consider the ripeness question because it was not raised in those appeals." Dissenting opinion of Fischer, J., ¶ 31. However, while this case was pending in this court, both the Second and Twelfth Districts explicitly affirmed their previously implicit positions that the constitutionality of the statute is ripe for review on direct appeal. *See State v. Thompson*, 2d Dist. Clark No. 2020-CA-60, 2021-Ohio-4027, ¶ 18; *State v. Hodgkin*, 12th Dist. Warren No. CA2020-08-048, 2021-Ohio-1353, ¶ 11, fn. 1 ("We find that by previously upholding R.C. 2967.271 as constitutional, we have implicitly determined that a defendant's constitutional challenge to the Reagan Tokes Law is ripe for review"), citing *Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837.

{¶ 21} We conclude that a defendant's challenge to the provisions of the Reagan Tokes Law is fit for judicial review on the defendant's direct appeal of his or her conviction and prison sentence, and we further conclude that withholding judicial consideration of the issue will cause hardship to such a defendant. We therefore hold that the issue of the constitutionality of an indeterminate sentence

imposed under R.C. 2967.271 ripens at the time of sentencing and that the law may be challenged on direct appeal.

### Conclusion

{¶ 22} We answer the certified question in the affirmative and hold that a criminal defendant's challenge to the constitutionality of R.C. 2967.271 is ripe for review on the defendant's direct appeal of his or her conviction and prison sentence. Accordingly, we reverse the judgment of the Sixth District Court of Appeals and remand the matter to that court for it to consider the merits of Maddox's constitutional challenge.

Judgment reversed
and cause remanded.

O'CONNOR, C.J., and DONNELLY and BRUNNER, JJ., concur.

KENNEDY, J., dissents, with an opinion.

FISCHER, J., dissents, with an opinion.

DEWINE, J., dissents, with an opinion.

_____

**KENNEDY, J., dissenting.**

{¶ 23} Because the Sixth District Court of Appeals' order certifying a conflict does not point to any judgment from another court of appeals with which its judgment in fact conflicts on a question of law, I dissent and would dismiss this matter as having been improvidently certified.

{¶ 24} Article IV, Section 3(B)(4) of the Ohio Constitution provides that "[w]henever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination."

{¶ 25} Construing this language, we have explained that "there must be an actual conflict between appellate judicial districts on a rule of law before

13

certification of a case to the Supreme Court for review and final determination is proper." *Whitelock v. Gilbane Bldg. Co.*, 66 Ohio St.3d 594, 613 N.E.2d 1032 (1993), paragraph one of the syllabus. We will therefore dismiss a certified-conflict case if, upon review, we discover that the matter is not properly before this court because no actual conflict on a rule of law exists. *E.g.*, *State v. Pettus*, 163 Ohio St.3d 55, 2020-Ohio-4836, 168 N.E.3d 406, ¶ 6.

{¶ 26} In this case, there is no conflict between the Sixth District's judgment and those of the courts of appeals listed in its order certifying a conflict. In none of the cases cited by the Sixth District did the appellate court articulate the rule of law that a challenge to R.C. 2967.271, which is a part of the "Reagan Tokes Law," is ripe for review on direct appeal from the judgment of conviction. None of those cases even addressed the issue of ripeness. Because a conflict between the judgments of different appellate districts on the same rule of law is required before a conflict may be certified to this court, the conflict question certified by the Sixth District is not properly before us.

{¶ 27} I recognize that "[r]ipeness is a justiciability doctrine," *Natl. Park Hospitality Assn. v. Dept. of Interior*, 538 U.S. 803, 807, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003), and that it is a threshold consideration for a court, *Thomas v. Union Carbide Agricultural Prods. Co.*, 473 U.S. 568, 579, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). But as we have long understood, " '[a] reported decision, although a case where the question might have been raised, is entitled to no consideration whatever as settling * * * a question not passed upon or raised at the time of the adjudication.' " (Brackets and ellipsis added in *Payne*.) *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 11, quoting *State ex rel. Gordon v. Rhodes*, 158 Ohio St. 129, 107 N.E.2d 206 (1952), paragraph one of the syllabus. We therefore should not assume from an appellate court's silence that it actually adopted a rule of law that is in conflict with a judgment of another court of appeals.

{¶ 28} For these reasons, I would dismiss this matter as having been improvidently certified. Because the majority does not, I dissent.

_____

**FISCHER, J., dissenting.**

{¶ 29} I respectfully dissent. While I do not necessarily question the substantive analysis set forth in the majority opinion or the other dissenting opinions, I conclude that this case is not the proper vehicle for this court to consider the conflict question.

{¶ 30} This appeal presents multiple procedural hurdles that render it less than ideal for addressing the ripeness question. First, the trial court did not consider the constitutionality of R.C. 2967.271, as appellant, Edward Maddox, did not challenge the law's constitutionality at the trial-court level.

{¶ 31} Second, there is a viable argument that no conflict exists between the Sixth District Court of Appeals' decision in this case and the conflict cases from the other districts. None of the conflict cases contains any analysis of the ripeness question. While it could be argued that the courts in the conflict cases implicitly concluded that the constitutional challenges to the law were ripe for review, it could also be argued that those courts did not consider the ripeness question because it was not raised in those appeals. Because the conflict cases contain no discussion of the ripeness question, I am not convinced that there is an actual conflict of law at issue in this case.

{¶ 32} As noted in the majority opinion, the constitutionality of R.C. 2967.271 has been the subject of numerous appeals throughout this state. *See* majority opinion at ¶ 18. Given the procedural problems noted above, I would dismiss this appeal as having been improvidently certified and would address the ripeness question in a case better suited to our review.

_____

**DEWINE, J., dissenting.**

{¶ 33} This court's authority is limited. We may decide only cases in which someone has suffered an injury in fact. Thus, a claim is not ripe for our review when it is premised "on contingent events that may never occur at all." *State ex rel. Jones v. Husted*, 149 Ohio St.3d 110, 2016-Ohio-5752, 73 N.E.3d 463, ¶ 21 ("*Jones III*") (lead opinion).

{¶ 34} This case presents precisely such a claim. Edward Maddox is serving a prison sentence that by law is presumed to end after no more than four years. There is a possibility, however, that Maddox could engage in conduct that would allow prison authorities to extend his prison term beyond his presumptive release date and a possibility that prison authorities will do so. Maddox wants to challenge the constitutionality of the statutory scheme allowing for that *possibility* now. The problem is that under our precedent Ohio courts are not permitted to decide speculative claims like the one that Maddox has raised. The majority, though, misreads federal caselaw on ripeness and, based on its misunderstanding, decides that Maddox's claim should be decided now.

## I. Maddox presumably will be released from prison after serving no more than four years

{¶ 35} Maddox was sentenced to an indefinite prison term of four to six years for burglary under R.C. 2967.271, which is a part of the "Reagan Tokes Law." Under Ohio's statutory scheme, trial courts are required to impose an indefinite prison sentence consisting of a minimum and a maximum term for certain felonies, including second-degree felonies such as Maddox's burglary offense. *See* R.C. 2929.14(A)(2)(a). It is presumed that a "person shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the

offender's presumptive earned early release date, whichever is earlier." R.C. 2967.271(B).[1]

{¶ 36} Thus, Maddox presumably will be released after serving no more than four years. *Id.* However, if certain conditions are met, the Ohio Department of Rehabilitation and Correction ("DRC") may rebut that presumption following a hearing. R.C. 2967.271(C). DRC may rebut Maddox's presumptive release date if it finds that (1) during his incarceration, Maddox violated the law or the prison's safety or security rules and his behavior while in prison shows that he has not been rehabilitated and remains a threat to society, (2) Maddox was placed in extended restrictive housing within the year preceding the date of the hearing, or (3) at the time of the hearing, Maddox is classified at a security level of three or higher. R.C. 2967.271(C)(1) through (3). If DRC rebuts the presumption, it may hold Maddox in prison for a "reasonable" additional period not exceeding the maximum term. R.C. 2967.271(D)(1).

{¶ 37} Maddox's claim that his sentence is invalid is based on prison authorities' *possible* extension of his release date beyond the presumptive minimum term. The question we must decide is whether the possibility of Maddox's serving a sentence longer than his presumptive minimum term is a sufficient injury to allow him to challenge the possible extension of his prison term now.

## II. We decide only cases in which someone has suffered an actual injury; a possibility of future harm is not enough

{¶ 38} The Ohio Constitution vests the "judicial power of the state" in this court and the inferior courts. Ohio Constitution, Article IV, Section 1. Although the language of our Constitution does not mirror the "cases" and "controversies"

---

1. A "presumptive earned early release date" comes into play when prison officials recommend to the trial court that an offender be released prior to the expiration of the minimum term based on "[the offender's] exceptional conduct while incarcerated or the offender's adjustment to incarceration." R.C. 2967.271(F)(1).

language of the United States Constitution, *see* United States Constitution, Article III, Section 2, our Constitution is generally understood to impose similar constraints, *see Fortner v. Thomas*, 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970). Judicial power is the power to decide "specific cases affecting the interests of persons or property." *Stanton v. State Tax Comm.*, 114 Ohio St. 658, 671-672, 151 N.E. 760 (1926). Thus, Ohio courts may decide only "actual controversies between parties legitimately affected by specific facts." *Fortner* at 14. And they must "refrain from giving opinions on abstract propositions" or issuing "premature declarations or advice upon potential controversies." *Id.*; *see also Travis v. Pub. Util. Comm.*, 123 Ohio St. 355, 359, 175 N.E. 586 (1931).

{¶ 39} The ripeness doctrine flows from the constitutional limitation of our authority to the exercise of the judicial power. *See Natl. Park Hospitality Assn. v. Dept. of Interior*, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003). It has also been said to encompass " 'prudential reasons for refusing to exercise jurisdiction.' " *Id.*, quoting *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993), fn.18; *but see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) (questioning the "continuing vitality of the prudential ripeness doctrine").

{¶ 40} As constitutional commands, ripeness and mootness can be viewed as "time dimensions of standing." Wright & Miller, *Federal Practice & Procedure*, Section 3532.1 (3d Ed.2017). For a claim to be ripe, there must have been an "injury in fact." *Susan B. Anthony List* at 158-159; *State ex rel. Walgate v. Kasich*, 147 Ohio St.3d 1, 2016-Ohio-1176, 59 N.E.3d 1240, ¶ 23 (lead opinion). To meet that requirement, a harm "must be 'concrete and particularized' and 'actual or imminent, not "conjectural" or "hypothetical." ' " *Susan B. Anthony List* at 158, quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). An allegation of future injury may satisfy the

ripeness requirement, but that bar is high and the injury must be " 'certainly impending' " or there must be a " 'substantial risk' that the harm will occur." *Id.*, quoting *Clapper v. Amnesty Internatl. USA*, 568 U.S. 398, 409, 414, 133 S.Ct. 1138, 185 L.Ed.2d 351 (2013), fn. 5. In contrast, "[a] claim is not ripe if it rests on contingent events that may never occur at all." *Jones III*, 149 Ohio St.3d 110, 2016-Ohio-5752, 73 N.E3d 463, at ¶ 21; *see also Trump v. New York*, ___ U.S. ___, ___, 141 S.Ct. 530, 535, 208 L.Ed.2d 365 (2020), quoting *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (to be justiciable, a claim must be " 'ripe'—not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all' ").

{¶ 41} The *Jones* trilogy of cases illustrates this point. Those cases involved the signature requirements for a ballot initiative sought to be placed before Ohio voters. *Jones III* at ¶ 1-11. After local boards of elections had conducted an initial review of the signatures, the Ohio secretary of state directed the boards to rereview certain aspects of the part-petitions and to recertify the results. *Id.* at ¶ 1-5.

{¶ 42} Proponents of the ballot initiative filed suit, challenging the secretary of state's authority to order a rereview of the signatures. *State ex rel. Husted v. Jones*, 144 Ohio St.3d 1472, 2016-Ohio-457, 45 N.E.3d 240 ("*Jones I*"); *Jones III* at ¶ 5. But the case became moot when the secretary of state determined that notwithstanding the fact that a number of the signatures had been invalidated on rereview, there remained sufficient signatures to certify the matter to the ballot. *Jones III* at ¶ 9. The Ohio Manufacturers' Association ("OMA") then filed its own action, alleging that thousands of invalid signatures had been verified and seeking to block the initiative from appearing on the ballot. *Ohio Manufacturers' Assn. v. Ohioans for Drug Price Relief Act*, 149 Ohio St.3d 250, 2016-Ohio-5377, 74 N.E.3d 399, ¶ 1-2 ("*OMA*"); *Jones III* at ¶ 10.

{¶ 43} In response to the OMA's action, the initiative's proponents filed a mandamus complaint in this court, seeking to restore signatures that were invalidated on rereview so as to avoid the possibility that the OMA's challenge would reduce the validated signatures to a number below the threshold for certification to the ballot. *State ex rel. Jones v. Husted*, 146 Ohio St.3d 1412, 2016-Ohio-3390, 5 N.E.3d 658 ("*Jones II*"); *Jones III*, 149 Ohio St.3d 110, 2016-Ohio-5752, 73 N.E3d 463, at ¶ 11. This court summarily dismissed *Jones II* "as premature." *Id.* We later explained that we had dismissed *Jones II* as unripe because the proponents' "claims were contingent upon future events that might or might not occur." *Jones III* at ¶ 21.

{¶ 44} After *Jones II* was dismissed, the "contingent events" did in fact come to pass. In *OMA*, this court determined that a number of the signatures at issue were invalid, causing the initiative to fall below the threshold of signatures required for the initiative to be certified to the ballot. *OMA* at ¶ 46 (lead opinion). At that point, the proponents' claims became ripe. *See Jones III* at ¶ 22. Thus, in *Jones III*, this court considered the merits of the proponents' challenge to the invalidation of the signatures on rereview. *Id.* at ¶ 30-53.

{¶ 45} The case at bar is akin to *Jones II*. At the time of *Jones II*, there remained enough valid signatures to certify the ballot initiative at issue. So it was speculative whether the initiative's proponents would suffer any injury as a result of the invalidation of any signatures on rereview. Similarly, it is speculative whether Maddox's prison term will be extended beyond his presumptive release date. As was the case for the proponents in *Jones II*, Maddox's claim relies on contingent events that may never occur.

{¶ 46} So far, Maddox has suffered no injury under the provisions of the Reagan Tokes Law that allow prison authorities to extend a presumptive minimum sentence. As it stands now, Maddox will be released after he serves his minimum sentence. Several things must occur in order for Maddox's release date to be

extended beyond that point. First, Maddox must engage in certain proscribed conduct, be placed in restrictive housing during a specific time, or be classified at a security level of three or higher at the time of any hearing on the extension of his sentence. *See* R.C. 2967.271(C)(1) through (3). Second, prison authorities must in fact hold a hearing on the matter. *Id.* Third, at the hearing, prison authorities must rebut the presumption that Maddox should be released at the end of his minimum sentence. *Id.* These are all "contingent events that may never occur." *Jones III*, 149 Ohio St.3d 110, 2016-Ohio-5752, 73 N.E3d 463, at ¶ 21.

{¶ 47} Furthermore, whether Maddox's prison term will be extended beyond its minimum is in large measure up to Maddox. It is up to him to decide whether he will engage in conduct that violates the law or the safety- or security-related prison rules. And whether Maddox will be classified at a high security level or placed in restrictive housing largely depends on his conduct while he is in prison. So, it is hard to see how Maddox has suffered an injury in fact from something that hasn't happened yet, that may never happen, and that is largely within his control.

{¶ 48} Under our precedent, Maddox has not established that he has suffered an actual injury sufficient to allow him to challenge the possibility that his sentence will be extended in the future.

### III. The majority misapplies federal precedent

{¶ 49} The majority reaches a contrary result by applying a two-part test for determining prudential ripeness that is derived from the United States Supreme Court's decision in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 153, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), *abrogated in part on other grounds*, *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1997). Under this test, a court must consider whether a case is "fit for judicial resolution" and whether withholding judicial review will cause hardship to the parties. *Id.*; *see also Hill v. Snyder*, 878 F.3d 193, 213 (6th Cir.2017).

**{¶ 50}** There's a big problem, though. Since *Abbott* was decided, the United States Supreme Court has made clear that the *Abbott* test applies only when determining prudential ripeness and that constitutional standards for justiciability must be met before one even gets to considerations of prudential ripeness. *See Susan B. Anthony List*, 573 U.S. at 157-158, 167, 134 S.Ct. 2334, 189 L.Ed.2d 246; *Trump*, ___ U.S. at ___, 141 S.Ct. at 535, 208 L.Ed.2d 365; *see also Common Cause v. Trump*, 506 F.Supp.3d 39, 56 (D.D.C.2020) (referring to the *Abbott* test as "the canonical test for prudential ripeness").

**{¶ 51}** Federal courts have explained that "[c]onstitutional ripeness turns on whether the plaintiff has established 'an injury-in-fact that is imminent or certainly impending.' " *Common Cause* at 45, quoting *Am. Petroleum Inst. v. Environmental Protection Agency*, 683 F.3d 382, 386 (D.C.Cir.2012). Once constitutional ripeness is established, determining prudential ripeness requires the court to balance " 'the fitness of the issues for judicial decision' against 'the hardship to the parties of withholding judicial consideration.' " *Id.*, quoting *Abbott*, 387 U.S. at 148-149, 87 S.Ct. 1507, 18 L.Ed.2d 681. Remarkably though, the majority here skips right over the constitutional-ripeness requirement and simply looks to the prudential-ripeness factors.

**{¶ 52}** The Supreme Court's decision in *Susan B. Anthony List* illustrates the problem with the majority's approach. That case involved a pre-enforcement challenge to an Ohio statute prohibiting certain "false statements" from being made during an election campaign. *Id.* at 152. The Sixth Circuit Court of Appeals had affirmed the federal district court's dismissal of the case on ripeness grounds after considering three factors: (1) the likelihood that the alleged harm would come to pass, (2) whether the factual record was sufficiently developed, and (3) the hardship to the parties if judicial relief were denied. *Id.* at 156. In reversing the Sixth Circuit, the Supreme Court made clear that the essential inquiry was the constitutional "injury-in-fact requirement." *Id.* at 158. After concluding that the claim met that

standard, the court mentioned only in passing the prudential-ripeness factors that the majority finds all important in this case. *See id.* at 167.

{¶ 53} In *Susan B. Anthony List*, the court questioned whether the *Abbott* factors for determining prudential ripeness should continue to be considered, noting that they are in tension with its recent pronouncement that federal courts are obligated to hear cases within their jurisdiction. Nevertheless, the court found it unnecessary to "resolve the continuing vitality of the prudential ripeness doctrine in th[at] case because the 'fitness' and 'hardship' factors [were] easily satisfied." *Susan B. Anthony List*, 573 U.S. at 167, 134 S.Ct. 2334, 189 L.Ed.2d 246.

{¶ 54} Fair to say, then, that today's majority opinion rests on the shakiest of foundations. It finds dispositive a test for prudential ripeness from federal caselaw that the United States Supreme Court has called into question. Yet, the majority neglects to engage in the threshold constitutional inquiry that the United States Supreme Court has found to be determinative.

{¶ 55} Tellingly, the very case that the majority cites as justification for skipping to the prudential-ripeness factors actually demonstrates how far the majority has gone off track. *See* majority opinion, ¶ 8, citing *Natl. Treasury Emps. Union v. United States*, 101 F.3d 1423 (D.C.Cir.1996). The majority pulls from that case this quote: " '[I]f a threatened injury is sufficiently "imminent" to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied.' " Majority opinion at ¶ 8, quoting *Natl. Treasury Emps. Union* at 1428. From this the majority implies that no analysis of constitutional ripeness is necessary. But the majority misses the point—whether one refers to the inquiry as one of standing or of constitutional ripeness, an injury must be sufficiently imminent for it to be judiciable.

{¶ 56} Indeed, the *Natl. Treasury* court was explicit that "ripeness * * * shares the constitutional requirement of standing that an injury in fact be certainly impending." *Id.* at 1427. Thus, the court in *Natl. Treasury* did what this court

should have done and analyzed constitutional ripeness before it analyzed prudential ripeness. *See id.* at 1430-1431. That case involved a challenge by a public union to the federal Line Item Veto Act, former 2 U.S.C. 691 and 692. *Natl. Treasury Emps. Union* at 1425. At the time of suit, the President had not yet exercised the line-item veto or even had the opportunity to do so. *Id.* at 1431. Because there was no threat of "imminent" injury, the court held that the claim was not ripe. *Id.* at 1430. The same rationale applies here. DRC has not yet attempted to extend Maddox's sentence, and nothing in the record suggests a concrete threat that it will do so. The alleged injury is not sufficiently imminent to be ripe.

{¶ 57} The majority also relies heavily on *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), a case involving facts very different from what we have here. In *Steffel*, the petitioner had twice been stopped by the police outside of a shopping mall and threatened with criminal prosecution for distributing handbills opposing the Vietnam War. *Id.* at 455. The petitioner's companion had already been arrested and charged with criminal trespass for his refusal to stop distributing the handbills after being warned not to do so. *Id.* at 455-456. The petitioner sought to challenge the statute in question, claiming that it "deter[red] the exercise of his constitutional rights." *Id.* at 459. The Supreme Court held that in those circumstances, the alleged threats of prosecution could not be characterized as "imaginary or speculative" and that the petitioner had standing to challenge the constitutionality of the statute. *Id.*

{¶ 58} The court in *Steffel* determined that the injury-in-fact requirement had been met because the imminent threat of enforcement of the statute deterred the petitioner from exercising his constitutional rights. *See id.*; *see also Calderon v. Ashmus*, 523 U.S. 740, 749, 118 S.Ct. 1694, 140 L.Ed.2d 970 (1998) (noting that in *Steffel*, "[t]he imminent threat of state criminal prosecution and the consequent deterrence of the plaintiff's exercise of constitutionally protected rights established a case or controversy"). Maddox, in contrast, has not shown any present injury.

He doesn't allege that he has been deterred from doing anything that he has the right to do; he has merely pointed to the possibility of injury in the future should certain speculative events come to pass.

### IV. Conclusion

{¶ 59} By law, there is a presumption that Maddox will serve only the minimum prison term to which he has been sentenced. Because Maddox's challenge to the possible extension of his sentence beyond the minimum term rests upon "contingent events that may never occur," we lack authority to review that claim now. *Jones III*, 149 Ohio St.3d 110, 2016-Ohio-5752, 73 N.E3d 463, at ¶ 21. I would affirm the judgment of the court of appeals dismissing Maddox's appeal. I respectfully dissent from the majority's decision to do otherwise.

_____

Julia R. Bates, Lucas County Prosecuting Attorney, and Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Mayle, L.L.C., Andrew R. Mayle, and Ronald J. Mayle, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, Michael J. Hendershot, Chief Deputy Solicitor General, and Diane R. Brey, Deputy Solicitor General, urging affirmance for amicus curiae Ohio Attorney General Dave Yost.

Timothy Young, Ohio Public Defender, and Craig Jaquith, Assistant Public Defender, urging reversal for amicus curiae Office of the Ohio Public Defender.

Raymond T. Faller, Hamilton County Public Defender, and Krista M. Gieske, Assistant Public Defender, urging reversal for amicus curiae Law Office of the Hamilton County Public Defender.

Anzelmo Law and James A. Anzelmo, urging reversal for amicus curiae Anzelmo Law.

_____