[Cite as *State v. Watkins*, 2022-Ohio-1231.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

      Plaintiff-Appellee,          :

                                                            No. 110355

      v.                                          :

DAZSHEA WATKINS,                        :

      Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** April 14, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-643751-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney and Jennifer Driscoll, Assistant Prosecuting
Attorney, *for appellee.*

Thomas Rein, *for appellant.*


EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant, Dazshea Watkins ("Watkins") appeals her sentence following guilty pleas to multiple charges. For the reasons set forth below, we affirm Watkins' sentence, but remand for the trial court to issue a nunc pro tunc sentencing entry.

## Procedural and Factual History

**{¶ 2}** On September 13, 2019, a grand jury returned a 32-count indictment against Watkins for attempted murder, felonious assault, kidnapping, endangering children, domestic violence, and pandering obscenity involving children. The indictment stemmed from Watkins' attempt to drown and smother her then 5-year--old son. Watkins videotaped the incident and forwarded it to her son's father. Watkins pled not guilty at her arraignment, was assigned counsel, and bond was set at $100,000.

**{¶ 3}** On December 5, 2019, Watkins appeared in court regarding a competency report authored by psychiatrist Aileen M. Hernandez, M.D. ("Dr. Hernandez") of the Common Pleas Court Psychiatric Clinic. The report stated that Dr. Hernandez was unable to form an opinion to a reasonable degree of medical certainty whether Watkins was competent to stand trial. Dr. Hernandez recommended that Watkins undergo a 20-day inpatient evaluation at Northcoast Behavioral Healthcare ("Northcoast"). Both parties stipulated to Dr. Hernandez's report. Defense counsel requested, and the trial court ordered, Watkins to undergo a sanity evaluation.

**{¶ 4}** On January 14, 2020, Watkins appeared in court regarding a competency report, dated January 3, 2020, and prepared by clinical psychologist Jennifer Gordon ("Dr. Gordon"), of Northcoast. Dr. Gordon opined that Watkins was competent to stand trial. Both parties stipulated to the competency report,

which the trial court accepted and reordered the sanity evaluation. Defense counsel requested a bond reduction, but the trial court held the request in abeyance.

{¶ 5} On February 27, 2020, Watkins appeared in court regarding a sanity report, dated February 17, 2020, authored by Dr. Selena Magalotti ("Dr. Magalotti"), who opined that Watkins did not have a severe mental disease or defect that would have caused her not to have known that her actions were wrong. Although the state was willing to stipulate to Dr. Magalotti's report, defense counsel indicated that, out of an abundance of caution, he was requesting an independent evaluation. The trial court granted defense counsel's request for the independent evaluation of Watkins.

{¶ 6} On December 16, 2020, the parties appeared, via video conference, regarding an independent sanity report, dated November 27, 2020, authored by Dr. Arcangela Wood ("Dr. Wood"), who opined that Watkins was sane at the time of her actions. Dr. Wood also opined that Watkins was competent to stand trial. Subsequently, both the state and the defense stipulated to Dr. Wood's report.

{¶ 7} On January 7, 2021, the parties appeared for a pretrial, conducted via Zoom, to place on the record a negotiated plea agreement. The state outlined the plea agreement, noting that Watkins intended to plead guilty to seven of the charges contained in the 32-count indictment. Pursuant to the agreement, Watkins would enter guilty pleas as follows: (1) Count 1, attempted murder, a first-degree felony, (2) Count 4, kidnapping, a first-degree felony, (3) Count 7, endangering children, a second-degree felony, (4) Count 11, domestic violence, a first-degree misdemeanor, (5) Count 13, felonious assault, a second-degree felony, (6) Count 18, endangering

children, a second-degree felony, and (7) Count 32, pandering obscenity of a minor, a second-degree felony.

{¶ 8} The state also noted that Count 32, pandering obscenity of a minor, would require Watkins to register as a Tier 2 sexual offender, that the parties had agreed that the offenses were not allied offenses of similar import, that Watkins would receive a prison term, and that the remaining counts would be dismissed. Defense counsel indicated that Watkins was prepared to enter guilty pleas in accordance with the outlined plea agreement.

{¶ 9} The trial court then engaged in a plea colloquy with Watkins, outlining the constitutional rights she would be waiving by entering the guilty pleas, explaining the nature of the charges and the maximum penalties. The trial court also explained the registration requirement for a person classified as a Tier 2 sexual offender, and that the Reagan Tokes Act applied to the first- and second-degree felonies included in the plea agreement. The trial court gave a detailed explanation, with examples, of the practical application of the Reagan Tokes Act. In addition, the trial court advised Watkins that she would be subject to mandatory postrelease control for a period of five years for the first-degree felonies and three years for the second-degree felonies.

{¶ 10} Thereafter, Watkins entered guilty pleas to the charges outlined above. The trial court ordered a presentence-investigation report, as well as a mitigation report, and scheduled the sentencing hearing for February 11, 2021.

{¶ 11} At the sentencing hearing, after the trial court reviewed the history of the case, the presentence-investigation report, the mitigation report, and the state's sentencing memorandum, it heard from the state. The assistant prosecuting attorney stated that the sentencing memorandum spelled out the state's position that Watkins deserves consecutive sentences for her acts against her own son.

{¶ 12} The assistant prosecuting attorney proceeded to provide details of Watkins' actions as follows:

> She had this child, who has just turned six years old, and she was angry at his father. And due to her anger at the father, she attempted to drown her son and then pulled him out of the bathtub and then smothered him with a pillow. She recorded herself doing this and, thankfully, she sent the video to the father of the son, who sent it to his sister who acted on it right away and probably saved the life of this young child.

{¶ 13} The assistant prosecuting attorney added that she needed to show the trial court the video, "because it's imperative that you understand that this child seemed to be deceased at the time. I know that I had to see the child in person before I believed that he was still alive." The assistant prosecuting attorney continued that even Watkins believed she had killed her son, because when the detectives interviewed Watkins, she stated: "[h]e's still here"? Finally, after stating that Watkins had not shown any remorse for her actions, the assistant prosecuting attorney played the video.

{¶ 14} Following the playing of the video, defense counsel spoke in mitigation, while acknowledging that Watkins had committed a heinous act. Defense counsel stated that although he was aware of the findings in the psychiatric

reports, Watkins' disturbing actions were not that of a sane person. Defense counsel then asked the trial court to consider a prison sentence at the lower end of the spectrum.

{¶ 15} Watkins apologized, stated she was very sorry, that her son did not deserve the trauma she had caused, and that "I was a good mother to my son, he was clothed, and he was fed well, and he had a roof over his head, but at that time I just lost it."

{¶ 16} The trial court proceeded to sentence Watkins to five years on Count 1 — rape, to three years on Count 4 — kidnapping, to two years on Count 7 — endangering children, to six months on Count 11 — domestic violence, to two years on Count 13 — felonious assault, to two years on Count 18 — endangering children, and to two years on Count 32 — pandering obscenity of a minor. The trial court ordered Watkins to serve the sentences in Counts 1, 4, 7, 13, and 32 consecutively to each other. The trial court ordered Watkins to serve the sentences in Counts 11 and 18 concurrently to the other counts.

{¶ 17} The trial court then advised Watkins that the Reagan Tokes Act would be applied to the five-year sentence on Count 1, attempted murder, and explained the presumptive release date, pursuant to R.C. 2967.271(B), and that it could be rebutted by the Ohio Department of Rehabilitation and Correction ("ODRC"). The trial court further advised Watkins that if the ODRC rebuts the presumption, Watkins' sentence may be extended for up to two-and-one-half years, pursuant to

R.C. 2967.271(C), for a period that does not exceed the maximum prison term imposed.

{¶ 18} The trial court explained that after factoring in the application of the Reagan Tokes Act, Watkins would serve a minimum prison term of 14 years and a maximum prison term of 16 one-half years. Defense counsel objected to the trial court's imposition of an indefinite sentence under the Reagan Tokes Act as being unconstitutional.

{¶ 19} Watkins now appeals and assigns the following errors for review:

### Assignment of Error No. 1

The trial court erred by ordering appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14 and H.B. 86.

### Assignment of Error No. 2

The trial court erred by imposing an indefinite prison sentence upon appellant which is unconstitutional.

### Law and Analysis

{¶ 20} In the first assignment of error, Watkins argues the trial court failed to make the requisite findings to impose a consecutive sentence. Watkins also argues the trial court failed to incorporate the necessary findings into the sentencing journal entry.

{¶ 21} Preliminarily, we review felony sentences under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 16. R.C. 2953.08(G)(2) provides that when reviewing felony

sentences, a reviewing court may overturn the imposition of consecutive sentences where the court "clearly and convincingly" finds that (1) "the record does not support the sentencing court's findings under R.C. 2929.14(C)(4)," or (2) "the sentence is otherwise contrary to law."

{¶ 22} R.C. 2929.14(C)(4) provides that in order to impose consecutive sentences, the trial court must find that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender, (2) that such sentences would not be disproportionate to the seriousness of the conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 23} To be in conformity with R.C. 2929.14(C)(4), the trial court is required to make the statutory findings at the sentencing hearing, which means that "'the [trial] court must note that it engaged in the analysis' and that it 'has considered the statutory criteria and specifie[d] which of the given bases warrants its decision.'"

*State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 26, quoting *State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999).

{¶ 24} To this end, a reviewing court must be able to ascertain from the record evidence to support the trial court's findings. *Bonnell* at ¶ 29. "A trial court is not, however, required to state its reasons to support its findings, nor is it required to [recite verbatim] the statutory language, 'provided that the necessary findings can be found in the record and are incorporated in the sentencing entry.'" *State v. Wells*, 8th Dist. Cuyahoga No. 109787, 2021-Ohio-2585, ¶ 71, citing *State v. Sheline*, 8th Dist. Cuyahoga No. 106649, 2019-Ohio-528, ¶ 176, quoting *Bonnell* at ¶ 37.

{¶ 25} In this matter, contrary to Watkins' contentions, the record reveals that the trial court made the requisite findings that conforms with R.C. 2929.14(C)(4). In satisfaction of the first requirement, the trial court stated: "The [c]ourt has formulated its decision based on the overriding principles and purposes of felony sentencing; namely, to protect the public from future crime by the defendant and to punish the offender."

{¶ 26} In satisfaction of the second requirement, relative to proportionality, the trial court stated it had ensured that the sentence being imposed "does not demean the seriousness of the crime, the impact it has on the victim, and is consistent with other similar offenses." The trial court also noted that the victim's tender age, "yet he will continue to relive the horrors of his fate at the hands of his mother, the person he first had a connection within the womb, the person whose

arms outside of a doctor or nurse were the first to cradle him, the person who is supposed to love and protect him."

{¶ 27} In satisfaction of the third requirement, the trial stated that

[a]t least two of the multiple offenses were committed as part of one or more multiple offenses, so committed was so great or unusual, that no single prison term for any of the offenses committed as part of any of the course of conduct adequately reflect the seriousness of the offender's conduct.

{¶ 28} In elaborating, the trial court added:

The defendant knew the wrongfulness of her actions, yet she undertook them out of anger and placed her own needs over those of her son, a son who is seeking love and protection. The defendant turned off the video, failing to show those who were seeing the video that the son actually survived, and that was to satisfy her own need for someone to come and see about her. She knew that by doing that there were people who cared about that little boy, and they would come and see about him, but at the same time they would be seeing about her. She placed her own needs above those of her son.

{¶ 29} Based on the foregoing, we find the trial court made the necessary findings, pursuant to R.C. 2929.14(C)(4), before imposing consecutive sentences. Our review of the record indicates that the trial court engaged in the proper analysis and weighed the appropriate factors in imposing the sentence. As such, we find Watkins' assertion to be without merit.

{¶ 30} However, the record reveals, that the trial court failed to incorporate the consecutive-sentencing findings, made at the sentencing hearing, into the judgment entry. Nevertheless, this is not fatal, because a trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry, after properly

making those findings at the sentencing hearing, does not render the sentence contrary to law. *Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 30.

{¶ 31} Rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court. *Id.* Thus, in light of *Bonnell*, we will remand this matter to the trial court for it to issue a new sentencing entry, nunc pro tunc, to incorporate its consecutive-sentence findings.

{¶ 32} Accordingly, we overrule the first assignment of error.

{¶ 33} In the second assignment of error, Watkins argues the indefinite sentencing, applicable to the first-degree attempted murder charge, is unconstitutional because it violates the separation-of-powers doctrine because (1) it violates the separation-of-powers doctrine under both the United States and Ohio Constitutions and (2) it denies her due process under both the United States and Ohio Constitutions.

{¶ 34} However, we need not dwell on the arguments presented. The Ohio Supreme Court held in *State v. Maddox*, Slip Opinion No. 2022-Ohio-764, that constitutional challenges to the Reagan Tokes Act are ripe for review. Based on the authority established by this district's en banc holding in *State v. Devallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470, the challenges Watkins advanced against the constitutional validity of the Reagan Tokes Act have been overruled, *Id.* at ¶ 17-54.

{¶ 35} Accordingly, we overrule the second assignment of error.

{¶ 36} Judgment affirmed and remanded for the trial court to issue a nunc pro tunc entry to bring the sentencing entry into compliance with the requirements of *Bonnell.*

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY EILEEN KILBANE, J., CONCUR


N.B. Judge Emanuella D. Groves concurred with the opinions of Judge Lisa B. Forbes (dissenting) and Judge Anita Laster Mays (concurring in part and dissenting in part) in *Delvallie* and would have found the Reagan Tokes Law unconstitutional.

Judge Mary Eileen Kilbane joined the dissenting opinion by Judge Lisa B. Forbes and the concurring in part and dissenting in part opinion by Judge Anita Laster Mays in *Delvallie* and would have found the Reagan Tokes Law unconstitutional.