**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Jones v. Husted,* Slip Opinion No. 2016-Ohio-5752.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-5752

THE STATE EX REL. JONES ET AL. *v.* HUSTED.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Jones v. Husted,* Slip Opinion No. 2016-Ohio-5752.]**

*Elections—Mandamus—Initiative-proposal petition—Restoration of previously invalidated part-petition signatures and other relief sought—Writ granted in part and denied in part.*

(No. 2016-1235—Submitted September 1, 2016—Decided September 9, 2016.)

IN MANDAMUS.

_____

**Per Curiam.**

**{¶ 1}** This mandamus action is the refiled companion case to *Ohio Mfrs. Assn. v. Ohioans for Drug Price Relief Act*, ___ Ohio St.3d ___, 2016-Ohio-5377, ___ N.E.3d ___ ("*Ohio Mfrs. Assn.*"). Relators, Tracy L. Jones, William S. Booth, Daniel L. Darland, and Latonya D. Thurman (hereafter, "the committee"), seek a writ of mandamus to compel Ohio Secretary of State Jon Husted to count more than

21,000 previously invalidated signatures in support of the "Ohio Drug Price Relief Act."

{¶ 2} For the reasons explained below, we grant the writ in part.

*Background*

{¶ 3} On December 22, 2015, the committee submitted approximately 10,029 part-petitions, containing 171,205 signatures, to Husted's office. Husted ordered the boards of elections to verify the petition signatures by 12:00 p.m. on December 30, 2015.

{¶ 4} Husted received certification forms from all 88 counties by the deadline. The county boards certified 119,031 valid signatures, 27,354 more than required, and sufficient totals from 48 counties, four more than required. However, Husted did not transmit the petitions to the General Assembly.

{¶ 5} Instead, on January 4, 2016, he issued Directive 2016-01, returning the part-petitions to the county boards with instructions to re-review two aspects of them and recertify the results. In response, on January 6, 2016, the committee filed a complaint for a writ of mandamus against Husted, challenging his authority to resubmit the part-petitions to the county boards for a second signature review. *State ex rel. Jones v. Husted*, case No. 2016-0020 ("*Jones I*").

{¶ 6} As a result of the re-review, seven county boards of elections invalidated part-petitions on the grounds that they contained signature deletions. Specifically, the committee alleges:

• The Adams County Board of Elections invalidated 17 part-petitions containing 278 signatures previously certified by the board of elections as valid.

• The Darke County Board of Elections invalidated three part-petitions containing 16 signatures previously certified by the board of elections as valid.

2

- The Hocking County Board of Elections invalidated three part-petitions containing 23 signatures previously certified by the board of elections as valid.

- The Madison County Board of Elections invalidated nine part-petitions containing 68 signatures previously certified by the board of elections as valid.

- The Miami County Board of Elections invalidated 67 part-petitions containing 781 signatures previously certified by the board of elections as valid.

- The Putnam County Board of Elections invalidated two part-petitions containing 18 signatures previously certified by the board of elections as valid.

- The Union County Board of Elections invalidated three part-petitions containing 56 signatures previously certified by the board of elections as valid.

{¶ 7} The Cuyahoga County Board of Elections initially certified 1,779 valid part-petitions, containing 26,113 valid signatures. In the second review, the board invalidated 18 part-petitions, reducing the total number of valid signatures to 25,855. However, Husted sua sponte invalidated 1,370 part-petitions containing 20,102 signatures from Cuyahoga County. He took this action based solely on evidence that unauthorized parties had stricken signatures from these part-petitions. His final certification included only 5,753 signatures from Cuyahoga County.

{¶ 8} The Delaware County Board of Elections initially certified 85 valid part-petitions, containing 324 valid signatures. But during its re-review, the board tied two to two on whether to invalidate part-petitions containing crossed-out signatures. Husted has never issued a decision breaking the tie. Instead, his final certification included zero signatures from Delaware County.

**{¶ 9}** Despite the invalidation of these signatures on re-review, Husted determined that the petition contained sufficient valid signatures, and so on February 4, 2016, he transmitted the proposed law to the General Assembly. Having achieved the desired result, the committee filed an application to dismiss *Jones I* as moot and we granted that motion. 144 Ohio St.3d 1472, 2016-Ohio-457, 45 N.E.3d 240.

**{¶ 10}** On February 29, 2016, the Ohio Manufacturers' Association and four other parties (collectively, "OMA") filed a signature protest under Article II, Section 1g of the Ohio Constitution. *Ohio Mfrs. Assn.*, ___ Ohio St.3d ___, 2016-Ohio-5377, ___ N.E.3d __, at ¶ 1. The complaint in *Ohio Mfrs. Assn.* alleged that the secretary certified thousands of invalid petition signatures and that the actual number of valid signatures was below the constitutional threshold for transmitting the initiative to the legislature. *Id.* at ¶ 8.

**{¶ 11}** On March 25, 2016, while *Ohio Mfrs. Assn.* was pending, the committee filed a mandamus complaint against Husted and ten county boards of elections. *State ex rel. Jones v. Husted*, case No. 2016-0455 ("*Jones II*"). The *Jones II* complaint challenged Husted's authority to order a re-review of the signatures and sought a writ restoring the signatures invalidated during the second review. In addition, the complaint sought an order reversing Husted's decision to invalidate the Cuyahoga County part-petitions and compelling him to break the Delaware County tie in favor of the 324 signatures previously verified. And it alleged that the Sandusky County Board of Elections invalidated six part-petitions for overcounting signatures when the circulator statements were in fact accurate.

**{¶ 12}** The *Jones II* relators filed a motion to consolidate their case with *Ohio Mfrs. Assn.* On June 15, 2016, we dismissed *Jones II* without prejudice as premature, and we denied the motion to consolidate as moot. 146 Ohio St.3d 1412, 2016-Ohio-3390, 51 N.E.3d 658.

4

**{¶ 13}** On August 15, 2016, we decided *Ohio Mfrs. Assn.*, rejecting OMA's claim that part-petitions are invalid if any names thereon are crossed out by unauthorized persons. ___ Ohio St.3d ___, 2016-Ohio-5377, ___ N.E.3d ___, at ¶ 11-32. However, we invalidated 10,303 petition signatures, due to overcounting on the circulators' statements and the use of two ineligible circulators. *Id*. at ¶ 46. Pursuant to Ohio Constitution, Article II, Section 1g, we gave the petition committee members ten days in which to make up the 5,044 signature shortfall established by the evidence in that case, and we ordered that if they were successful, the initiative should be resubmitted to the General Assembly for consideration. *Id*. at ¶ 47.[1]

**{¶ 14}** On August 17, 2016, the committee filed the present mandamus action. *State ex rel. Jones v. Husted*, case No. 2016-1235 ("*Jones III*"). *Jones III* seeks the same relief that *Jones II* sought: restoration of the signatures invalidated during the re-review by the county boards of elections, restoration of the Cuyahoga County signatures invalidated by Husted, correction of the Sandusky County Board of Election's alleged error, and an order breaking the tie in Delaware County in favor of counting those signatures.

**{¶ 15}** On August 31, 2016, the committee proffered supplementary part-petitions to Husted to further its attempt to proceed directly to the November 2017 ballot, but he refused to accept them for filing.

**{¶ 16}** On September 6, 2016, after the committee had submitted additional signatures pursuant to our decision in *Ohio Mfrs. Assn.* and sufficient signatures

---

[1] Chief Justice O'Connor dissented from the portion of the decision invalidating part-petitions due to overcounting. ___ Ohio St.3d ___, 2016-Ohio-5377, ___ N.E.3d ___, at ¶ 54. She and Justice O'Neill each dissented from the decision to return the initiative to the legislature, rather than place it on the ballot, assuming that the initiative proponents cured the shortfall. *Id*. at ¶ 55, 61-62. Justice O'Donnell, joined by Justice Kennedy, dissented in part, on the grounds that the court should have also invalidated the part-petitions circulated by Fifi Harper. *Id*. at ¶ 58. Justice Lanzinger agreed with Justice O'Donnell regarding the Harper part-petitions, but she would have also invalidated all part-petitions containing cross-outs. And Justice Pfeifer dissented from the opinion in its entirety. *Id*. at ¶ 63.

had been validated, Husted resubmitted the proposed initiative to the General Assembly.

*The motion for leave to amend*

{¶ 17} In his answer, Husted asserted the affirmative defense of failure to join necessary parties. Anticipating that Husted might argue that the county boards were necessary parties, the committee moved for leave to amend the complaint to add them, if necessary. The absence of the county boards has not become an issue, and we deny the motion as moot.

*Procedural arguments*

{¶ 18} In his merit brief, filed on August 24, 2016, Husted offers almost no substantive rejoinder to the allegations. Instead, he asserts that the claims in *Jones III* are barred by res judicata, laches, and other procedural bars. The relators in *Ohio Mfrs. Assn.* have submitted an amicus brief "Not Expressly Supporting A Party," in which they make similar arguments about laches, waiver, and other procedural impediments. None of these arguments has merit.

{¶ 19} When *Jones II* was filed seeking to restore wrongly invalidated signatures, the boards of elections filed a motion for judgment on the pleadings, claiming mootness. They argued that because Husted had certified the petitions to the General Assembly, notwithstanding the allegedly improper signature invalidations, "adding the [* * *] signatures that were allegedly improperly invalidated [* * *] is entirely inconsequential."

{¶ 20} In response, the committee observed that those invalidated signatures might not *remain* inconsequential, depending on the outcome of OMA's petition challenge:

> The instant action [*Jones II*] seeks to recover the signatures that were improperly rejected by the Respondents because [those signatures] will be necessary to the sufficiency of the Petition in the event that

the legal challenge filed by the Petition's opponents succeeds in reducing the Petition's sufficiency below either the 3% statewide threshold or the 44 county threshold.

**{¶ 21}** We concluded that the committee and the boards were describing a problem not of mootness, but of ripeness. The committee's claims were contingent upon future events that might or might not occur. "In order to be justiciable, a controversy must be ripe for review." *Keller v. Columbus*, 100 Ohio St.3d 192, 2003-Ohio-5599, 797 N.E.2d 964, ¶ 26. A claim is not ripe if it rests on contingent events that may never occur at all. *State v. Booker*, 10th Dist. Franklin No. 15AP-42, 2015-Ohio-5118, ¶ 21; *U.S. Bank, N.A. v. 2900 Presidential Drive, L.L.C.*, 2d Dist. Greene No. 2013 CA 60, 2014-Ohio-1121, ¶ 32-35. For this reason, we unanimously dismissed *Jones II* without prejudice as unripe. 146 Ohio St.3d 1412, 2016-Ohio-3390, 51 N.E.3d 658. The logic behind that decision remains valid and overcomes all the procedural arguments advanced by Husted and OMA.

**{¶ 22}** For example, Husted contends that res judicata applies because the committee should have raised the claims it raises in this case either in *Jones I* or in *Ohio Mfrs. Assn*. "Res judicata precludes a party from * * * raising matters that should have been brought by the party in a prior action involving the same parties." *Buckner v. Bank of New York*, 12th Dist. Clermont No. CA2013-07-053, 2014-Ohio-568, ¶ 38. The committee could not have asserted these claims in the prior cases because they were not yet ripe, which means res judicata cannot apply. Nor could this be, as OMA contends, a collateral attack on a final judgment, if the judgment did not and could not have adjudicated these issues.

**{¶ 23}** Alternatively, Husted suggests that laches should apply because the committee "waited for *50 days* after the Secretary certified the Proposed Initiative to the General Assembly to bring their Second Mandamus" and they "have no excuse for their delay." (Emphasis sic.) But the same ripeness problem existed in

the second mandamus action (*Jones II*); until this court invalidated 10,303 petition signatures in *Ohio Mfrs. Assn.*, the committee had no viable cause of action to seek to increase its signature total. If it had filed its complaint to have more signatures counted when the petition was already with the General Assembly, we would have recognized the complaint as a quintessential request for an advisory opinion and dismissed it for failure to state a claim. OMA's assertion that the committee waived its mandamus claims by not filing earlier fails for the same reason.

{¶ 24} OMA suggests that mandamus is not available, because the committee has an alternative remedy at law. That alternative, according to OMA, was a challenge proceeding under Ohio Constitution, Article II, Section 1g. Section 1g states that this court has exclusive original jurisdiction "over all challenges made to petitions and signatures upon such petitions under this section." By its plain language, Section 1g creates a cause of action to challenge, that is, to *oppose* signatures and part-petitions. It does not create a broader cause of action only to challenge decisions by the secretary or the county boards to reject petitions. *That* cause of action still falls under this court's original mandamus jurisdiction.

{¶ 25} Likewise, Husted's assertion that the committee's mandamus claims were compulsory counterclaims in *Ohio Mfrs. Assn.* is meritless. A claim cannot be compulsory if the forum lacks jurisdiction to hear it. *State ex rel. Internatl. Union of Operating Engineers, Local Nos. 18, 18A, 18B, 18C, 18RA, AFL-CIO v. Simmons*, 58 Ohio St.3d 247, 250, 569 N.E.2d 886 (1991).

{¶ 26} Finally, Husted asserts that *Ohio Mfrs. Assn.* should not apply retroactively. As a general rule, Ohio court decisions apply retrospectively, unless a party has contract rights or vested rights under the prior decision. *Peerless Elec. Co. v. Bowers*, 164 Ohio St. 209, 210, 129 N.E.2d 467 (1955). But an Ohio court has discretion to apply its decision prospectively only after weighing three considerations:

> whether the decision establishes a new principle of law that was not foreshadowed in prior decisions; whether retroactive application of the decision promotes or retards the purpose behind the rule defined in the decision; and whether retroactive application of the decision causes an inequitable result.

*DiCenzo v. A-Best Prods. Co.*, *Inc.* 120 Ohio St.3d 149, 2008-Ohio-5327, 897 N.E.2d 132, ¶ 25.

{¶ 27} As to the first factor, not every case of first impression automatically operates prospectively only. Rather, to operate prospectively only, the new principle of law must arise from a case of first impression *and* must be one not foreshadowed by previous decisions. *Beaver Excavating Co. v. Testa*, 134 Ohio St.3d 565, 2012-Ohio-5776, 983 N.E.2d 1317, ¶ 44. Our decision in *Ohio Mfrs. Assn.* was foreshadowed by our earlier opinion in *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections*, 65 Ohio St.3d 167, 602 N.E.2d 615 (1992), in which we held that an error in a circulator's statement would not invalidate the entire part-petition if the signature miscount did not promote fraud. *Id.* at 172-173.

{¶ 28} The two remaining factors present more compelling reasons for retroactive application. *Ohio Mfrs. Assn.* established the principle that a signature cross-out should not invalidate the entire part-petition. Applying that holding retroactively would obviously promote the purpose behind the rule: it would reinstate otherwise valid petition signatures from Ohio voters that were invalidated

improperly. And there is no credible claim that counting valid part-petitions is an inequitable result.[2]

{¶ 29} In sum, we reject Husted and OMA's procedural objections to this action.

*Arguments on the merits*

**Part-petitions invalidated by Husted due to deleted signatures**

{¶ 30} As noted above, *Ohio Mfrs. Assn.* confirmed that crossed-out signatures do not invalidate an entire part-petition, irrespective of who does the crossing out. ___ Ohio St.3d ___, 2016-Ohio-5377, ___ N.E.3d ___, at ¶ 11-32. Contrary to that rule, Husted invalidated 1,370 Cuyahoga County part-petitions containing 20,102 signatures that the board of elections had twice deemed valid. And he has admitted that he did so solely on the basis of the signature deletions. By simple application of *Ohio Mfrs. Assn.*, these signatures should be counted.

{¶ 31} Husted responds that some of these part-petitions are also invalid due to overcounting. As evidence, he submits two part-petitions: Cuyahoga County part-petition No. 001411, containing 2 validated signatures, and Cuyahoga County part-petition No. 001762, containing 8 validated signatures. He implies that there are additional such part-petitions and that the committee needed to prove which of the other 1,368 Cuyahoga County part-petitions did *not* contain verification defects. But Husted has never revealed which part-petitions he invalidated, making it impossible for the committee to prove their validity. Under the circumstances, it is impossible to confirm that Husted invalidated these part-petitions for reasons other than signature deletions.

{¶ 32} We therefore deduct the 10 signatures identified above, and we order Husted to certify 20,092 additional signatures in Cuyahoga County.

---

[2] Husted suggests that it would be inequitable to count part-petitions that were invalidated for signature cross-outs if those part-petitions are also defective due to circulator overcounts. We agree, and we have therefore discounted those part-petitions.

**Part-petitions invalidated by the boards due to deleted signatures**

{¶ 33} The committee identifies part-petitions from seven counties that were invalidated on the basis of signature deletions. However, a small subset of those part-petitions also have overcounting defects and are therefore invalid for that reason.

{¶ 34} In Adams County, the following part-petitions were invalidated by the county board of elections due solely to signature deletions:

| PART-PETITION NUMBER | NUMBER OF VALIDATED SIGNATURES |
|---|---|
| 000006 | 18 |
| 000007 | 18 |
| 000008 | 23 |
| 000009 | 24 |
| 000010 | 21 |
| 000011 | 19 |
| 000012 | 14 |
| 000013 | 17 |
| 000014 | 18 |
| 000015 | 21 |
| 000016 | 17 |
| 000017 | 12 |
| 000018 | 16 |
| 000019 | 14 |
| 000025 | 4 |

Adams County part-petition Nos. 000020 (containing 12 signatures) and 000022 (containing 10 signatures), which the committee identified as having been invalidated based on signature deletions, also contain signature overcounts. Therefore, we order Husted to certify the validity of 256 additional signatures in Adams County.

**{¶ 35}** In Darke County, three part-petitions were wrongly invalidated: Darke County part-petition Nos. 000008 (containing 2 signatures), 000011 (containing 2 signatures), and 000025 (containing 10 signatures). We therefore order Husted to certify the validity of 14 additional signatures in Darke County.[3]

**{¶ 36}** In Hocking County, three part-petitions were wrongly invalidated: Hocking County part-petition Nos. 000001 (containing 9 signatures), 000002 (containing 3 signatures), and 000012 (containing 11 signatures). We order Husted to certify the validity of 23 additional signatures in Hocking County.

**{¶ 37}** In Madison County, eight part-petitions were wrongly invalidated.

| PART-PETITION NUMBER | NUMBER OF VALIDATED SIGNATURES |
|---|---|
| 000003 | 16 |
| 000004 | 19 |
| 000005 | 18 |
| 000007 | 4 |
| 000014 | 6 |
| 000024 | 2 |
| 000034 | 1 |
| 000043 | 1 |

---

[3] This number matches the number in the committee's complaint and brief. The figure of 16 signatures in the second affidavit of the committee's attorney, Derek Clinger, seems to be a typographical error.

One part-petition identified by the committee, Madison County part-petition No. 00032, was not invalidated on the basis of signature deletions. Rather, it simply contained no valid signatures. Accordingly, we order Husted to certify the validity of 67 additional signatures in Madison County.

{¶ 38} In Putnam County, two part-petitions were wrongly invalidated: Putnam County part-petition Nos. 000001 (containing 17 signatures) and 000004 (containing 1 signature). We order Husted to certify the validity of 18 additional signatures in Putnam County.

{¶ 39} In Union County, three part-petitions were wrongly invalidated: Union County part-petition Nos. 000003 (containing 22 signatures), 000007 (containing 18 signatures), and 000013 (containing 16 signatures). We order Husted to certify the validity of 56 additional signatures in Union County.

{¶ 40} Finally, the committee asserts through the second affidavit of attorney Derek Clinger that in Miami County, the board went from validating 134 part-petitions (containing 1,188 valid signatures) in the first review to validating 77 part-petitions (557 signatures) following the re-review. This affidavit also states that of the 57 part-petitions invalidated during the second round, only 16 contained problems with the circulator statement.

{¶ 41} But the affidavit then asserts, "There are sixty-seven (67) part-petitions with struck out signatures that do not have" defective circulator statements, "containing 781 signatures that were certified as valid" during the December 2015 first review. But how can there be 67 part-petitions wrongly invalidated during the re-review when the board invalidated only 57 part-petitions in the second review? The committee's demonstrative evidence is of no assistance: The committee provides an exhibit listing all 136 part-petitions submitted to the board, with columns to indicate if each had an overcount, a signature deletion, or both. But the exhibit does not indicate which part-petitions were invalidated in the

initial review, which were invalidated in the re-review, and which were certified as valid.

{¶ 42} Based on the evidence in the record, we find no error regarding the signature totals in Miami County.

### The tie vote in Delaware County

{¶ 43} The committee asserts that Husted has a clear legal duty under R.C. 3501.11(X) to break the tie vote at the Delaware County Board of Elections and that *Ohio Mfrs. Assn.* requires him to break the tie in favor of counting the signatures. Husted responds that he has no duty to break the tie because R.C. 3501.11(X) requires a board of elections to submit a matter involving a tie vote to him within 14 days of the vote and the board missed that deadline.

{¶ 44} Both arguments miss the point. As noted above, the Delaware County Board of Elections initially certified 85 valid part-petitions, containing 324 valid signatures. *It has never rescinded that certification.* And when Husted sent the part-petitions back to the boards for "re-review" and "re-certification," his directive did not cancel their previous certifications. The Delaware County board entertained a motion to *invalidate* certain part-petitions, but the motion did not pass.

{¶ 45} Therefore, the only resolution that exists from the Delaware County board is a certification of 324 valid signatures. That certification should be honored unless Husted presents an alternative basis to reject the board's initial certification.

{¶ 46} He does make an alternative argument, asserting that upon applying the principles stated in *Ohio Mfrs. Assn.*, the actual number of valid signatures on the Delaware County part-petitions was 241, not 324. However, he presents evidence of only two part-petitions that are invalid based upon *Ohio Mfrs. Assn.*: Delaware County part-petition Nos. 000064 (containing 8 signatures) and 000082 (containing 2 signatures). We therefore deduct those 10 signatures, and we order Husted to certify the validity of 314 additional signatures in Delaware County.

**The signatures in Sandusky County**

{¶ 47} The committee alleges that during the re-review process, the Sandusky County Board of Elections invalidated six part-petitions for containing a circulator overcount when in fact there was no overcount. This claim fails for lack of evidence.

{¶ 48} The committee presents an exhibit regarding these part-petitions rejected by the Sandusky County board during the re-review. Clinger was allegedly told by a board employee that the board invalidated petitions for overcounts but not for signature deletions. But he claims that his review of the rejected part-petitions in the exhibit reveals that six part-petitions, containing 20 signatures, do not have overcounts and therefore should not have been rejected.

{¶ 49} The six part-petitions in question are Sandusky County part-petition Nos. 000066, 000068, 000071, 000087, 000092, and 000097. But the committee's exhibit contains only two of these part-petitions: Sandusky County part-petition Nos. 000066 and 000068. There is no evidence, therefore, to establish that the board incorrectly invalidated the other four part-petitions.

{¶ 50} The copy of Sandusky County part-petition No. 000068 in the committee's exhibit is missing its circulator statement, so the committee has failed to establish that the signatures were not overcounted.

{¶ 51} As for Sandusky County part-petition No. 000066, the only evidence in the record that this part-petition was invalidated is Clinger's hearsay account of what someone told him and the word "invalid" written atop the part-petition by an unknown person. When coupled with Husted's evidence calling into question the authenticity of some of the part-petitions in the committee's exhibit, this evidence is insufficient for us to declare with any confidence that this part-petition was incorrectly invalidated.

{¶ 52} For these reasons, we decline to order Husted to validate additional signatures from Sandusky County.

*Conclusion*

**{¶ 53}** Although we found in *Ohio Mfrs. Assn.,* ___ Ohio St.3d ___, 2016-Ohio-5377, ___ N.E.3d ___, that the December 2015 petition contained an insufficient number of signatures, that finding was based on the limited evidence that was before the court in that case. As stated above, we order Husted to validate 20,092 additional signatures from Cuyahoga County, 256 additional signatures from Adams County, 14 additional signatures from Darke County, 23 additional signatures from Hocking County, 67 additional signatures from Madison County, 18 additional signatures from Putnam County, 56 additional signatures from Union County, and 314 additional signatures from Delaware County. The evidence submitted in this case therefore establishes that the petition filing exceeded the minimum-signature threshold. Thus, it was unnecessary for the committee to collect additional signatures or for the initiative to be resubmitted to the General Assembly. We therefore order Husted to rescind his September 6, 2016 transmission of the initiative to the General Assembly. Husted is instead ordered to accept for verification the supplementary part-petitions proffered to his office on August 31, 2016, and if they are found to contain sufficient valid signatures, to place the matter on the November 2017 general-election ballot.

Writ granted in part

and denied in part,

and motion for leave to amend denied as moot.

O'CONNOR, C.J., and FRENCH and O'NEILL, JJ., concur.

PFEIFER, J., concurs in part and dissents in part, with an opinion.

O'DONNELL, J., dissents, with an opinion joined by KENNEDY, J.

LANZINGER, J., dissents.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

{¶ 54} I concur in the portion of the judgment granting the writ of mandamus, in the ultimate conclusion of the majority that the December 2015 petition filing exceeded the minimum-signature threshold, and in the order the court issues. I dissent in part only because I would hold that the part-petitions contain more valid signatures than the lead opinion recognizes.

{¶ 55} I would add to the signature total the signatures stricken due to alleged overcounting in Cuyahoga County (10 signatures), Adams County (22 signatures), Delaware County (10 signatures), and Sandusky County (20 signatures), for the reasons stated in my dissent in *Ohio Mfrs. Assn. v. Ohioans for Drug Price Relief Act*, __ Ohio St.3d ___, 2016-Ohio-5377, __ N.E.3d ___, ¶ 66-79.

_____

**O'DONNELL, J., dissenting.**

{¶ 56} Respectfully, I dissent.

{¶ 57} R.C. 3501.38(E)(1) requires petition circulators to execute a statement on each part-petition containing "the circulator's name, *the address of the circulator's permanent residence*, and the name and address of the person employing the circulator to circulate the petition, if any." (Emphasis added.)

{¶ 58} As I explained in my separate opinion in *Ohio Mfrs. Assn. v. Ohioans for Drug Price Relief Act*, ___ Ohio St.3d ___, 2016-Ohio-5377, ___ N.E.3d ___, one of the circulators, Fifi Harper did not do that. The address she provided on the part-petitions she circulated was a private mail box at "Pack Ship and Print Center," a business in a commercial strip mall. It is not a residential address, and Harper never lived there. As a circulator, she is not permitted to disregard Ohio's election law by making a false representation in her circulator's statement that a nonresidential address is her residential address.

{¶ 59} In my view, the part-petitions she circulated containing a false residential address are invalid and should be stricken. Without these part-petitions, the Committee for Ohioans for Drug Price Relief Act did not obtain the requisite number of valid signatures from 44 of 88 Ohio counties as required by Article II, Section 1g of the Ohio Constitution.

{¶ 60} In this case, the committee seeks to compel Secretary of State Jon Husted to count more than 21,000 signatures that he previously invalidated. However, there is a dual requirement for this petition drive: to obtain the required total number of signatures and to obtain a sufficient number of those signatures from 44 of 88 counties in Ohio. Thus, even if Husted is required to count the additional 21,000 signatures, the petition drive fails if the constitutional mandate to obtain sufficient signatures from the requisite number of counties has not been met.

{¶ 61} Although the majority orders Husted to certify the validity of 67 additional signatures in Madison County, 35 of those were collected on part-petitions circulated by Harper that contained a false residential address and should be stricken. R.C. 3519.06(D); *see also Kyser v. Cuyahoga Cty. Bd. of Elections,* 36 Ohio St.2d 17, 23, 303 N.E.2d 77 (1973). And without the signatures on the part-petitions Harper circulated in Madison County, the committee lacks sufficient signatures from 44 of 88 counties as required by Article II, Section 1g of the Ohio Constitution.

{¶ 62} Accordingly, because Husted had no obligation to submit the initiative petition to the General Assembly, I would deny the writ of mandamus.

KENNEDY, J., concurs in the foregoing opinion.

_____

McTigue & Colombo, L.L.C., Donald J. McTigue, J. Corey Colombo, and Derek S. Clinger, for relators.

Michael DeWine, Attorney General, Steven T. Voigt, Principal Assistant Attorney General, and Brodi J. Conover, Assistant Attorney General, for respondent.

Bricker & Eckler, L.L.P., Kurtis A. Tunnell, Anne Marie Sferra, Nelson M. Reid, and James P. Schuck, urging denial of the writ for amici curiae Ohio Manufacturers' Association, Ohio Chamber of Commerce, Pharmaceutical and Research Manufacturers of America, Keith A. Lake, and Ryan R, Augsburger.

_____