[Cite as *MWL Ents., L.L.C. v. Mid-Miami Invest. Co.*, 2023-Ohio-547.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| MWL ENTERPRISES LLC | : | |
| Appellee/Cross-Appellant | : | C.A. No. 29445 |
| | : | |
| v. | : | Trial Court Case No. 2019 CV 01651 |
| | : | |
| MID-MIAMI INVESTMENT CO. et al. | : | (Civil Appeal from Common Pleas Court) |
| Appellant/Cross-Appellee | : | |
| | : | |

· · · · · · · · · ·

O P I N I O N

Rendered on February 24, 2023

· · · · · · · · · ·

DAVID MICHAEL RICKERT, Attorney for Appellant/Cross-Appellee, MWL Enterprises LLC

MICHAEL D. MEUTI and KELLY E. MULRANE, Attorneys for Appellee/Cross-Appellant, Store Master Funding II, LLC

TERRY W. POSEY, JR., Attorney for Appellant/Cross-Appellee, Mid-Miami Investment Co., et al.

· · · · · · · · · · · ·

WELBAUM, P.J.

{¶ 1} Mid-Miami Investment Co. ("Mid-Miami") appeals from a judgment denying

its request for sanctions under R.C. 2323.51. In turn, Store Master Funding IV, LLC ("Store Master") has cross-appealed from the court's judgment denying its motion for contempt against Mid-Miami.

{¶ 2} After reviewing the record, we conclude that the trial court did not err in denying Mid-Miami's motion for sanctions under R.C. 2323.51, as Store Master's motion for contempt against Mid-Miami was not frivolous. The trial court correctly noted that a reasonable lawyer could have argued that the circumstances surrounding a prior injunction granted against Mid-Miami were similar to the circumstances that led Store Master to file the contempt motion. The trial court also did not err in denying Store Master's contempt motion, as Mid-Miami had not taken action. Instead, Mid-Miami had simply threatened to take action concerning the easements involved in the prior injunction. The contempt motion, therefore, was not ripe. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

{¶ 3} This appeal and cross-appeal arise from prior litigation involving Mid-Miami, Store Master, and another party, MWL Enterprises, LLC ("MWL"), which did not file a contempt motion and is not a party to the appeal. The factual background, as set forth in our prior opinion, is as follows:

Mid-Miami, MWL, and Store Master each own commercial property at the intersection of Paragon Road and State Route 725 in Washington Township. In the 1970s, all of the land at issue originally was owned by

John Wieland and his wife. In January 1977, the Wielands sold a parcel to Cassano Investments. Soon thereafter, the Wielands sold their remaining parcels to other purchasers, including Mid-Miami. Mid-Miami subsequently sold a portion of its parcel to First National Bank of Dayton. MWL now owns the former Cassano property; Store Master owns the property formerly owned by First National Bank.

The sale from the Wielands to Cassano included a reciprocal easement, prepared by Attorney John Koverman, which currently applies to Mid-Miami and MWL. Koverman prepared a similar easement for the sale from Mid-Miami to First National Bank. The easements have been in effect since 1977. In essence, the easements allow Mid-Miami, MWL, and Store Master to use each other's driveways, ingresses and egresses, and parking lots. The easement at issue in this appeal is the easement encumbering Mid-Miami's property, which includes driveways that run east-west across the north of MWL's property and north-south along the east side of MWL's property. The north-south driveway provides access to State Route 725.

* * *

* * *

Except for references to the parties' names, paragraph four of the easements are identical. They read, in relevant part:

4. The parties desire to enter a mutual Agreement for parking and for ingress and egress over such areas of the [Mid-

Miami] Tract and the [MWL/Store Master] Tract as the [parties] and their respective successors and assigns may respectively use for parking and for ingress and egress.

THE UNDERSIGNED PARTIES DO AGREE AS FOLLOWS:

A. Each of the parties hereby grants an easement for driveway, ingress and egress, and parking purposes, over that part of the [respective parties'] Tract, which is used for such purposes by the party owning such real estate and the successor or successors in interest and assigns of such party.

B. Said Easement is for the benefit of each of the parties as their interests appear in [the Tracts], and their respective successors and assigns, and all persons now or hereinafter occupying or who may be lawfully upon [either Tract].

C. The cost of operation, maintenance, repair, replacement and removal, in connection with said Easement, shall be borne by each of the parties hereto and their respective successors and assigns, and each of the parties hereby agree to maintain, repair, replace and remove as necessary, surface improvements on the respective parcels of real estate, without contribution from the other party or their successors or assigns.

D. Neither the parties or [sic] their successors in interest

shall erect barriers or other obstructions which will prevent the free flow of traffic from one tract to the other.

E. Nothing herein shall be construed as preventing the parties or their successors or assigns from constructing or maintaining buildings and other improvements on their respective tracts.

Mid-Miami decided that it wanted to close its driveway along the east side of MWL's property, in large part due to maintenance costs and individuals[ ] using the property to bypass the traffic signal at the intersection of Paragon Road and State Route 725. In February 2019, Mid-Miami offered to sell this portion of its property to MWL, indicating that it intended to close the driveway if the sale could not be completed.

Two months later, MWL filed suit against Mid-Miami, alleging that Mid-Miami had expressed its intent to breach the easement. MWL named Store Master as a defendant due to its similar easement on Mid-Miami's property. MWL sought (1) a declaratory judgment that its right to access State Route 725 may not be impeded or terminated by Mid-Miami and (2) a permanent injunction preventing Mid-Miami from depriving MWL of access to State Route 725 and access across Mid-Miami's property. Store Master subsequently filed a cross-claim against Mid-Miami, also requesting a declaratory judgment and injunctive relief.

*MWL Ents., LLC v. Mid-Miami Invest. Co.*, 2d Dist. Montgomery No. 28915, 2021-Ohio-

1742, ¶ 2-6.

{¶ 4} We further stated as background that:

On April 20, 2020, the trial court granted Mid-Miami's motion for summary judgment to the extent that MWL and Store Master claimed an implied easement by necessity. However, the court concluded that the disputed driveway "is still 'used' by Mid-Miami for driveway and ingress and egress purposes because that portion of Mid-Miami's property still consists of a driveway that exits onto a public road." The court further concluded that MWL would be irreparably harmed if Mid-Miami were permitted to cut off access to State Route 725 via the driveway. The court thus held that MWL was entitled to a declaratory judgment and a permanent injunction as to the express easement, and it granted MWL's motion for partial summary judgment. Noting that the written easement between Mid-Miami and Store Master was identical to the written easement between Mid-Miami and MWL, the court stated that the "same findings apply to the written easement between Mid-Miami and Store Master."

*Id.* at ¶ 9.

{¶ 5} Subsequently, Store Master filed a motion for partial summary judgment, and the trial court granted that motion on the same grounds. *Id.* at ¶ 10-11. The court also granted a permanent injunction against Mid-Miami. *Id.* at ¶ 11. Mid-Miami then appealed from the trial court's decision. *Id.* at ¶ 12.

{¶ 6} On appeal, we affirmed the trial court. Our opinion noted that we agreed

with the trial court's interpretation of the easement documents. *Id.* at ¶ 24. After reviewing the easements, we stated that:

>The language of the easements thus indicated a general understanding that the "use" of the property would be reflected by how the property was configured. The easements did not require the property owners to have parking lots, driveways, and ingresses and egresses, and the property owners had the flexibility to construct buildings or otherwise improve the property. However, to the extent that the properties contained parking lots, driveways, and ingresses and egresses, the easements required the free flow of traffic from one property to another and the mutual use of parking areas, which could not be impeded.

*Id.* at ¶ 27.

{¶ 7} Our opinion further observed that "Mid-Miami's interpretation of the term 'use' would render the easements illusory. Whether the easement was being used for the purpose of driveways, ingress and egress, or parking would be subject to the whims of the property owner. Under Mid-Miami's approach, Mid-Miami (or the other property owners) could unilaterally state, at any given moment and without making any changes to the property, that the easement property was or was not being used for driveways, ingress and egress, and parking." *Id.* at ¶ 31.

{¶ 8} In concluding that the trial court properly granted a permanent injunction, we stated as follows:

>The trial court's permanent injunctions simply require Mid-Miami to

comply with the terms of the easements. The injunctions do not require that Mid-Miami maintain a driveway that provides access to State Route 725 in perpetuity. Rather, they require, consistent with the terms of the easements, that *so long as there is a driveway that provides ingress and egress to State Route 725*, Mid-Miami may not deprive MWL and Store Master of access to that driveway. The trial court did not abuse its discretion in imposing such permanent injunctions.

(Emphasis sic.) *Id.* at ¶ 46.

**{¶ 9}** Our opinion and judgment were filed on May 21, 2021. Shortly thereafter, on August 13, 2021, Store Master filed a motion in the trial court seeking a show cause order against Mid-Miami. According to the motion, despite the prior court order and injunction, Mid-Miami had twice told Store Master that it intended to destroy the driveway to State Route 725. The materials attached to the motion included a July 8, 2021 memo written by John Koverman, who was the general partner of Mid-Miami. *Id.* at ¶ 20. On July 15, 2021, Mid-Miami's counsel forwarded the memo to the attorneys for MWL and Store Master.

**{¶ 10}** In the memo, Koverman expressed certain intentions based on the prior court statements that Mid-Miami did not need to maintain the driveway leading to State Route 725 in perpetuity. In this regard, Koverman stated that:

Mid-Miami intends to remove that [north/south] driveway this fall. It will be maintained as open space. At its termination to the south, a split rail fence and shrubbery will be maintained. Fencing and shrubs will also

be installed around the north/west terminus.

The east/west portion of the so-called driveway was a part of an existing parking lot that was left over after the residential condo project was completed. It will not be removed at this time as it will be a dead end strip of real estate.

Ex. A, July 8, 2021 Memo attached to Show Cause Motion (Aug. 13, 2021), p. 1.

{¶ 11} On July 23, 2021, MWL responded by demanding that Koverman retract his statements and abide by the court order. *See* Ex. B attached to the Show Cause Motion, p. 1. Store Master also responded to Koverman's memo the same day. In an email, Store Master demanded that Koverman disavow the memo and agree not to interfere with Store Master's ability to access Route 725 by the easement. The email set a deadline of July 30, 2021, for Koverman to respond in writing. *See* Ex. C attached to the Show Cause Motion, p. 1. Store Master further stated that if the assurances were not received by that date, it would pursue all available remedies, including an injunction and sanctions for contempt of court. *Id.*

{¶ 12} Koverman responded in writing on July 29, 2021, reiterating Mid-Miami's right to close the driveway and its intention to go forward. *See* Ex. D attached to the Show Cause Motion, p. 1. Koverman then sent another letter to MWL and Store Master on August 3, 2021, threatening to seek fees for frivolous conduct. *See* Ex. E attached to the Show Cause Motion, p. 1-2.

{¶ 13} On August 10, 2021, Store Master replied to Koverman and said that if Koverman did not withdraw his threat to destroy the driveway by 5:00 p.m. on August 12,

2021, Store Master would pursue legal relief, including contempt. *See* Ex. F attached to the Show Cause Motion, p. 2. Koverman did not respond, and, as noted, Store Master's contempt motion was filed on August 13, 2021.

{¶ 14} On August 16, 2021, the trial court filed an order requiring Mid-Miami to show cause by August 20, 2021, why it should not be held in contempt. On August 17, 2021, Mid-Miami asked the court for an extension of time to respond to the show cause order. Mid-Miami also said it would take no action concerning the issues raised by Store Master until the court resolved the pending dispute.

{¶ 15} The court granted the extension of time, and Mid-Miami then filed a response to the contempt motion on August 27, 2021. In the response, Mid-Miami defended its interpretation of the court orders and also asked that Store Master be held liable under R.C. 2323.51 because its motion to show cause was frivolous. At that point, the court set a briefing schedule and referred the matter to a magistrate for a hearing on both motions. However, the court did not hold a hearing because Store Master represented during a phone conference that no evidentiary hearing was required. *See* Final Appealable Decision and Entry Overruling Master's Motion for Order to Show Cause and Overruling Mid-Miami's Cross Motion for Sanctions ("Final Order") (March 7, 2022), p. 7. The trial court agreed that no evidentiary hearing was needed. *Id.*

{¶ 16} On March 7, 2022, the court filed a decision overruling both parties' motions. *Id.* The court first held that Store Master had failed to prove by clear and convincing evidence that Mid-Miami was in contempt. This was based on two reasons: (1) the matter was not ripe for judicial review because Store Master had failed to present

evidence that Mid-Miami had done anything toward effectuating its expressed intent; and (2) even if such evidence had been presented, the court disagreed that removing the north/south driveway and replacing it with top soil, grass seed, and a split rail wood fence would violate the current injunction. *Id.*

{¶ 17} In overruling Mid-Miami's motion for sanctions, the trial court found that Store Master's argument was not frivolous, because "[a] reasonable lawyer could argue that the circumstances attending the Court's injunction were similar to the circumstances that led Store Master to file its motion for a show cause order." *Id.* at p. 12. In this regard, and also in the context of overruling the contempt motion, the court commented that neither it nor our court had previously ruled on the issue of whether Mid-Miami's current threatened action would violate the easements. *Id.* Specifically, the court noted that:

> The parties' current disagreement centers on an issue that the Court did not consider in this matter: is Mid-Miami's planned open grassy area, split-rail fence, and shrubbery a "barrier" or "other obstruction" that would violate paragraph 4D of the easements? Or is it an "other improvement" authorized by paragraph 4E of the easements? Although this issue is not properly before the Court, Store Master can plausibly argue that Mid-Miami's planned changes violate the easements because they are a "barrier" or "other obstruction." It would certainly appear that the fence and shrubbery would constitute a "barrier." The fence and shrubbery will be located "[a]t [the north/south driveway's] termination to the south" – in other

words, where the driveway currently exits onto State Route 725. *See* 7/08/21 Koverman Ltr. It would also appear that the grassy area could be construed as another "obstruction" that would keep drivers from entering and exiting Mid-Miami's property from State Route 725. Koverman appears to agree that Mid-Miami's planned changes violate the easements. *See* Koverman Depo. at 50; *Second Dist. Op.* at ¶ 23 ("Koverman's testimony suggested that such a change might not have been permitted by the easement * * *.").

Final Order at p. 13, quoting *MWL Ents.*, 2d Dist. Montgomery No. 28915, 2021-Ohio-1742, at ¶ 23.

{¶ 18} As indicated, Mid-Miami appealed from the trial court's decision, and Store Master filed a cross appeal. We will address the parties' assignments of error in order.

## II. Denial of Frivolous Conduct Motion

{¶ 19} Mid-Miami's sole assignment of error is that:

The Trial Court Erred in Overruling the Motion for Frivolous Conduct.

{¶ 20} Under this assignment of error, Mid-Miami contends that the trial court's decision to deny sanctions for frivolous conduct was in error, both on the law and the undisputed facts. According to Mid-Miami, the issue of whether it could change the use of the driveway or remove it entirely had been previously litigated, and there was no basis for attempting to hold it in contempt for changing the property's use.

{¶ 21} R.C. 2323.51(B)(1) provides that "any party adversely affected by frivolous

conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal."   The ground asserted here is based on R.C. 2323.51(A)(2)(a)(ii), which defines "frivolous conduct" as conduct that "is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law."   *See* Mid-Miami Brief, p. 8, citing R.C. 2323.51(A)(2)(a)(ii).

{¶ 22} In cases involving requests for sanctions, "[t]he legal standard of review depends on whether a court is reviewing legal or factual decisions."   *Horenstein, Nicholson & Blumenthal, L.P.A. v. Hilgeman*, 2021-Ohio-3049, 178 N.E.3d 71, ¶ 168 (2d Dist.), citing *Namenyi v. Tomasello*, 2d Dist. Greene No. 2013-CA-75, 2014-Ohio-4509, ¶ 19-20.   " '[W]hether a pleading is warranted under existing law or can be supported by a good-faith argument for an extension, modification, or reversal of existing law is a question of law, which is reviewed de novo.' "   *Swartz v. Hendrix*, 2d Dist. Darke No. 2010-CA-18, 2011-Ohio-3422, ¶ 22, quoting *Foland v. Englewood*, 2d Dist. Montgomery No. 22940, 2010-Ohio-1905, ¶ 32.   In de novo review, we do not defer to the trial court's decision.   *Id.* at ¶ 24.

{¶ 23} After reviewing the record and the prior decisions in this case, we agree with the trial court that a sanction under R.C. 2323.51 was unwarranted.   Based on the correspondence between Mid-Miami and Store Master, it is clear that the parties differed in their interpretation of what the prior litigation had decided and what Mid-Miami was allowed to do with respect to the easement.

**{¶ 24}** In its most recent decision, the trial court noted that in the prior litigation, both courts had focused on the construction of the word "used" in paragraph 4A of the easements and had considered other parts of the easements only in connection with this point. *See* Final Order at p. 11. This is correct. *See MWL Ents.*, 2d Dist. Montgomery No. 28915, 2021-Ohio-1742, at ¶ 19 (noting that "[t]he central question here is the meaning of the term 'used' in paragraph 4A of the easements").

**{¶ 25}** In deciding the issue, we did consider the language in the easements, and in particular, paragraphs 4D and 4E, but this was not for the purpose of deciding the meaning of the terms in those paragraphs like "obstructions," or "improvements." *Id*. at ¶ 25-27. Instead, because the easements did not define "use," we reviewed the language in the easements to "inform the meaning of that term." *Id*. at ¶ 25. Having done this review, we found that:

> The language of the easements thus indicated a general understanding that the "use" of the property would be reflected by how the property was configured. The easements did not require the property owners to have parking lots, driveways, and ingresses and egresses, and the property owners had the flexibility to construct buildings or otherwise improve the property. However, to the extent that the properties contained parking lots, driveways, and ingresses and egresses, the easements required the free flow of traffic from one property to another and the mutual use of parking areas, which could not be impeded.

*Id.* at ¶ 27.

**{¶ 26}** We agreed with the trial court that Mid-Miami had continued "to 'use' the easement property for driveway and ingress and egress because that property consists of a driveway that exits onto State Route 725" and that, "[i]In light of that conclusion, MWL and Store Master have the right to unimpeded use of that driveway and ingress/egress." *Id.* at ¶ 45.   As previously mentioned, we further found that the trial court had not abused its discretion in granting permanent injunctions, because:

The trial court's permanent injunctions simply require Mid-Miami to comply with the terms of the easements.   The injunctions do not require that Mid-Miami maintain a driveway that provides access to State Route 725 in perpetuity.  Rather, they require, consistent with the terms of the easements, that *so long as there is a driveway that provides ingress and egress to State Route 725*, Mid-Miami may not deprive MWL and Store Master of access to that driveway.

(Emphasis sic.)   *Id.* at ¶ 46.

**{¶ 27}** Our court's prior decision did not express any opinion on how Mid-Miami might alter the property and whether that would comply with the easements' other provisions.   The parties obviously differ about whether Mid-Miami's proposed change violates the easements.   And, as the trial court noted, a lawyer could reasonably argue that Mid-Miami's proposed change is similar to what was already rejected.   As a result, the trial court did not err in finding that Store Master was not guilty of frivolous conduct.

**{¶ 28}** The trial court correctly used an objective standard.  *E.g., State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 15.   "The

test * * * is whether no reasonable lawyer would have brought the action in light of the existing law. In other words, a claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim." *Hickman v. Murray*, 2d Dist. Montgomery No. 15030, 1996 WL 125916, *5 (Mar. 22, 1996). *Accord DiFranco* at ¶ 15.

{¶ 29} As noted in *Hickman*, "the statute was not intended to punish mere misjudgment or tactical error. * * * Instead, the statute was designed to chill egregious, overzealous, unjustifiable, and frivolous action." (Citations omitted.) *Id.*

{¶ 30} Again, Store Master's argument was one a reasonable lawyer could make, even if Store Master may have used an incorrect vehicle for making it. Accordingly, Mid-Miami's assignment of error is overruled.

{¶ 31} We will now consider Store Master's cross-assignment of error.

### III. Denial of Contempt Motion

{¶ 32} Store Master's sole cross-assignment of error states that:

The Trial Court Erred in Declining to Hold Mid-Miami in Contempt.

{¶ 33} Under this assignment of error, Store Master argues first that its contempt motion was ripe because Mid-Miami's conduct amounted to an actual and genuine threat, and parties may enforce their rights under easements and obtain injunctions before those rights are violated. Store Master further contends that the trial court erred in rejecting its contempt motion because the permanent injunctions require Mid-Miami to comply with the easements, and the injunctions prohibit the same things the easements prohibit. Store Master also argues that Mid-Miami's 2021 threats were materially identical to what

had been threatened in 2019.

{¶ 34} In responding, Mid-Miami first argues that the cross-appeal is not properly before us because no appeal is allowed from denial of a contempt motion if the party taking the appeal has not been prejudiced by the denial. Mid-Miami also contends that the contempt matter was not ripe because contempt only applies to past conduct. In contrast, nothing had yet occurred here. Finally, Mid-Miami asserts that its purported actions differed from the 2019 conduct and that its actions were permitted by the prior litigation.

{¶ 35} "Contempt is defined in general terms as disobedience of a court order." *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 554, 740 N.E.2d 265 (2001). Contempt can be based either on statutory authority or on a court's inherent power to enforce its orders. *City of Cincinnati v. Cincinnati Dist. Council 51, Am. Fedn. of State, Cty. & Mun. Emps., AFL-CIO*, 35 Ohio St.2d 197, 202, 299 N.E.2d 686 (1973).

{¶ 36} Here, in addition to the court's inherent authority, R.C. 2727.11 provides that "[a]n injunction or restraining order granted by a judge may be enforced as the act of the court, and disobedience thereof may be punished by the court, or by a judge who granted it in vacation, as a contempt." Contempt is either indirect or direct, with indirect contempt generally referring to contempt that occurs, as here, outside of court proceedings. *E.g., McGill v. McGill*, 3 Ohio App.3d 455, 456, 445 N.E.2d 1163 (2d Dist.1982).

{¶ 37} "Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order. * * * Thus, civil contempts

are characterized as violations against the party for whose benefit the order was made." (Citation omitted.) *Corn* at 554-555. "A prima facie case of contempt is made by establishing a prior court order and a violation of its terms," and contempt findings "must be supported by clear and convincing evidence." (Citations omitted.) *Martin v. Martin*, 179 Ohio App.3d 805, 2008-Ohio-6336, 903 N.E.2d 1243, ¶ 24 (2d Dist.). "The burden then shifts to the nonmoving party to establish a defense for noncompliance." *Schutz v. Schutz*, 2017-Ohio-695, 85 N.E.3d 481, ¶ 52 (2d Dist.), citing *Wolf v. Wolf*, 1st Dist. Hamilton No. C-090587, 2010-Ohio-2762, ¶ 4.

{¶ 38} We review contempt orders for abuse of discretion. *See State ex rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 21. An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.* This is a "highly deferential standard of review," and "we will not lightly substitute our interpretation for that of the issuing court." (Citations omitted.) *Hunter* at ¶ 29.

{¶ 39} As to Mid-Miami's claim that no appealable order exists because Store Master was not prejudiced by the dismissal, we disagree. It is true that the Supreme

Court of Ohio has said that "[t]here is no right of appeal from the dismissal of a contempt motion when the party making the motion is not prejudiced by the dismissal." *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 520 N.E.2d 1362 (1988), syllabus. However, that is not the situation here.

{¶ 40} *Denovchek* involved dismissal of a contempt motion against a witness who failed to appear when subpoenaed for trial. *Id.* The case was subsequently tried, and the party who had subpoenaed the witness did not request a continuance, nor did he claim any prejudice. After trial, this party appealed and did not assert any error relating to the witness's failure to appear. *Id.*

{¶ 41} Apart from the appeal process, the party filed a contempt motion against the witness. However, the trial court denied the motion, stating that the witness had not been properly served. *Id.* The court of appeals dismissed the appeal on different grounds, and further appeal was taken to the Supreme Court of Ohio, which found that the appellant did not have a right to appeal the dismissal. *Id.* at 15.

{¶ 42} While the Supreme Court of Ohio found that the witness had been properly served and disapproved of his willful conduct in evading the subpoena, it also noted that the appellant did "not seek a benefit other than that of establishing a principle and seeing [the witness] punished." *Id.* at 16. The court stressed that "Appellant's underlying action on the merits has run its course and the appellate procedure has been exhausted. Where, as here, no claim of prejudice is made by appellant, the matter of [the witness's] contempt has, in the main, a criminal character." *Id.* In this situation, the court found that "[a]bsent a showing of prejudice to the party making the contempt motion, contempt

is essentially a matter between the court and the person who disobeys a court order or interferes with court processes. Therefore, we hold that there is no right of appeal from the dismissal of a contempt motion when the party making the motion is not prejudiced by the dismissal." *Id.* at 17.

{¶ 43} In reaching this holding, the court distinguished other situations, commenting that "Ohio cases which have allowed an appeal from a dismissal of contempt charges are distinguishable from this case by the existence of prejudice to the party opposing the dismissal and the fact that the motion for contempt is directed at a party to the action." *Id.*, citing *State, ex rel. Ventrone, v. Birkel*, 65 Ohio St.2d 10, 417 N.E.2d 1249 (1981). (Other citations omitted.)

{¶ 44} In the case before us, Store Master's motion for contempt was directed at a party to the action. Furthermore, Store Master was prejudiced by the trial court's dismissal. Specifically, while the trial court believed the matter was not ripe, it also considered the merits of the contempt motion and denied it on that basis as well. Final Order at p. 8-11.

{¶ 45} In addition, even if the court had simply dismissed the contempt motion based on the ripeness issue, Store Master would have been able to appeal from that decision and argue that the case, in fact, was ripe. *E.g., Bogart v. Gutmann*, 2018-Ohio-2331, 115 N.E.3d 711, ¶ 16-22 (2d Dist.) (appellate court rejected appellant's claim that his legal malpractice claim was ripe and also found, after considering the claim's merits, that the summary judgment granted against him was proper).

{¶ 46} As noted, the trial court found that the contempt charge was not ripe

because Mid-Miami had not yet done anything to effectuate its expressed intent. Final Order at p. 8. "To be justiciable, a claim must be ripe for review, and a claim is not ripe 'if it rests on contingent events that may never occur at all.' " *State ex rel. Quinn v. Delaware Cty. Bd. of Elections*, 152 Ohio St.3d 568, 2018-Ohio-966, 99 N.E.3d 362, ¶ 37, quoting *State ex rel. Jones v. Husted*, 149 Ohio St.3d 110, 2016-Ohio-5752, 73 N.E.3d 463, ¶ 21 (plurality opinion).

{¶ 47} The trial court's original summary judgment decision during the prior litigation found that a real controversy existed and that the case was justiciable due to Mid-Miami's threats to cut off MWL's access to State Route 725. Summary Judgment Decision (Apr. 20, 2020), p. 16. The court also found irreparable harm for purposes of the injunction. *Id.* at p. 16-17. However, this differed from a contempt situation.

{¶ 48} The Supreme Court of Ohio has said that "prior disobedience of a trial court's order is a necessary antecedent to a court's imposition of coercive sanctions in the exercise of its civil contempt powers against future non-compliance with such order." *Bd. of Edn. of Brunswick City School Dist. v. Brunswick Ed. Assn.*, 61 Ohio St.2d 290, 295, 401 N.E.2d 440 (1980). This is because "a fundamental principle of our legal system [is] that a person should not be incarcerated for the mere intention to commit an unlawful act." *Id.* at 294. *See also Vogel v. Mestemaker*, 2016-Ohio-7244, 76 N.E.3d 488, ¶ 22 (2d Dist.) (noting that our legal system does not have a doctrine of anticipatory contempt).

{¶ 49} Given the progress of this litigation and Koverman's statements, there is little doubt that he will proceed with his plans to remove access to State Route 725.

Nonetheless, when the contempt action was filed, Koverman had not yet taken any action. He was also not bound by Store Master's deadline for responding. We therefore agree with the trial court that the contempt matter was not yet ripe.

{¶ 50} Store Master argues that the inability to file the contempt charge places it an untenable position because "once the driveway is destroyed, it could be too late." Store Master's Reply Brief, p. 5. However, the trial court was not suggesting that Store Master was required to wait until this occurred. Instead, once any action is taken that is believed to violate the terms of the easement, Store Master has the ability to file an action and request a restraining order or an injunction.

{¶ 51} Accordingly, we agree with the trial court that the contempt filing was not ripe. As indicated, our prior opinion did not address the issue on which the parties currently disagree. Whether any further action violates the terms of the easements remains to be seen.

{¶ 52} Based on the preceding discussion, Store Master's sole cross-assignment of error is overruled.

IV. Conclusion

{¶ 53} The assignment of error of Mid-Miami and the cross-assignment of error of Store Master having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.